**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**EDGAR TATE,**

**Plaintiff,**

**v.**

**JO GULLEY ANCELL,**
**et al.,**

**Defendants.**                                        **No. 08-0200-DRH**

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### I. Introduction, Background and Facts

Pending before the Court are two motions to dismiss (Docs. 6 & 21).

Plaintiff filed responses to both motions (Docs. 26 & 27).[1]  Based on the following,

the Court **GRANTS in part** and **DENIES in part** both motions to dismiss.

Edgar Tate filed a seven-count complaint against Defendants Jo Gulley

Ancell, Jeff Standerfer, Al Farmer, Eugene Davis, Lorie Humphrey, Kim Evans,

Addus Home Health Care[2], and the Department of Human Services, Division of

Rehabilitation Services (Doc. 2).   Count I is against all Defendants alleging

---

[1] In his response to Defendant DRS Group's motion to dismiss, Tate attached an affidavit in support of his response. In deciding the merits of the motion to dismiss, the Court may not consider the affidavit as the Court is not converting the motion to dismiss as one for summary judgment.  **See Federal Rule of Civil Procedure 12(d)**.

[2] In the motion to dismiss, Defendants state that the correct name is Addus Healthcare, Inc. (Doc. 6, p. 1).

discrimination based upon a disability in violation of the Americans with Disability Act ("ADA") 42 U.S.C. § 12101 *et seq.*; Count II is against all Defendants alleging discrete discrimination based upon national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981, and the Equal Protection Clause of the Fourteenth Amendment made actionable through 42 U.S.C. § 1983; Count III is against all Defendants alleging hostile work environment discrimination based upon national origin in violation of Title VII, 42 U.S.C. § 1981, and the Equal Protection Clause of the Fourteenth Amendment made actionable through 42 U.S.C. § 1983; Count IV, also against all Defendants, alleges retaliation for opposing sex discrimination in violation of Title VII, Section 1981 and the Fourteenth Amendment (made actionable by Section 1983); Count V is against all Defendants and alleges retaliation for opposing unlawful acts of nepotism in violation of state law and Public Policy; Count VI is against all Defendants alleging First Amendment retaliation for opposing sexual harassment and nepotism; and Count VII, again against all Defendants, alleges loss of consortium.

The following facts are taken from Tate's complaint. Tate, a Hispanic male with sleep apnea, began working as a Rehabilitation Counselor for the Department of Human Services, Division of Rehabilitaion Services ("DRS") in Anna, Illinois in February 1994.[3] Al Farmer was the supervisor at the Anna DRS office from January 2003 to December 2004. Jo Gulley Ancell is the supervisor for the

---

[3]DRS is a public agency run by the State of Illinois that provides vocational and rehabilitation services and home services to disabled persons.

Carbondale, Anna and SIU DRS offices and has been since January 2005. Jeff Standerfer is the Assistant Bureau Chief for DRS based in Springfield, Illinois. He was Farmer's immediate supervisor and now is Ancell's immediate supervisor. Eugene Davis was the personal assistant to the head of DHS for the State of Illinois, Carole Adams. Addus is an private corporation based in Marion, Illinois that provides private support staff, by contract, to the DRS offices in Carbondale and Anna. Kim Evans was the branch manager at the Addus Marion office. Lorie Humphrey is employed by Addus as a contract worker in the DRS Anna office.

According to the complaint, Farmer sexually harassed several female employees at the Anna office. These employees were Veronica Johnson, Mary Sadler and Mary Rendelman. With Tate's support, one of the females filed a complaint against Farmer with the Equal Employment Opportunity Commission ("EEOC"). Thereafter, Farmer asked Davis to help him in regards to the sexual harassment claims. Davis then contacted Standerfer and requested that Farmer be "protected." Tate alleges that in retaliation, Farmer began making a series of arbitrary and capricious misconduct charges against him and the others. Farmer also fired Sadler and Rendleman, Tate's secretary of eight years.[4] Farmer retired in December 2004.

Thereafter, Standerfer appointed Ancell to replace Farmer. The complaint alleges that Ancell was hired because of her "willingness to continue the program of retaliating against those who had complained against Farmer." Ancell

---

[4]Rendelman was fired in April 2004.

began taking job actions against Tate and the other employees. For instance, Ancell fired several employees and issued disciplinary proceedings against Tate and other employees. Tate also alleges that some of the contract workers hired by Evans were requested either by Ancell or Evans to inform on Tate and look for opportunities to charge him with misconduct. Tate further alleges that Ancell assigned Humphrey to work closely with Tate in reassessing HSP customers and that Ancell and Humphrey conspired to make false charges against Tate so that he would be subject to discipline. Tate also alleges that Ancell hired contract workers from Addus in violation of the DRS rules against nepotism. Specifically, Ancell hired Evan's sister, Sandy Kohler and her daughter Kasey Evans. In January 2007, Tate wrote a letter to the Executive Office of the Inspector General alleging that the hiring of Evan's relatives was unlawful.

Tate maintains that on various occasions that Ancell filed false charges against him, treated him differently than a person with a comparable position in another office, had other employees spy on him and humiliated him by comparing him unfavorably with an employee in another office who is white. Tate alleges that Defendants' actions (discipline, suspension and harassment) against him were because he has sleep apnea, he is Hispanic, and he spoke out about the sexual harassment and the nepotism.

## II. **Motion to Dismiss Standard**

When ruling on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must look to the complaint to

determine whether it satisfies the threshold pleading requirements under Federal Rule of Civil Procedure 8. Rule 8 states that a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief. " **FED. R. CIV. P. 8(a)(2)**. In 2007, the Supreme Court held that Rule 8 requires that a complaint allege "enough facts to state a claim to relief that is plausible on its face" to survive a Rule 12(b)(6) motion. ***Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)***. In other words, the Supreme Court explained it was "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'" by providing "more than labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do ...." ***Id.* at 1964-65 (quoting *Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)***). The Seventh Circuit has read the ***Bell Atlantic*** decision to impose "two easy-to-clear hurdles":

> First, the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests.' Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court.

***E.E.O.C. v. Concentra Health Services, Inc., 496 F.3d 773, 776 (7th Cir. 2007) (citations omitted)***.

In ***Tamayo v. Blagojevich***, the Seventh Circuit emphasized that even though ***Bell Atlantic*** "retooled federal pleading standards" and "retired the oft-quoted *Conley* formulation," notice pleading is still all that is required. **526 F.3d**

**1074, 1083 (7th Cir. 2008).** "A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." ***Id.; Accord Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir.2008)( "surviving a Rule 12(b)(6) motion requires more than labels and conclusions"; the allegations "must be enough to raise a right to relief above the speculative level")**.

In making this assessment, the District Court accepts as true all well-pled factual allegations and draws all reasonable inferences in plaintiff's favor. ***Tricontinental Industries, Inc., Ltd. v. Price WaterhouseCoopers, LLP,* 475 F.3d 824, 833 (7th Cir.), *cert. denied,* --- U.S. ----, 128 S.Ct. 357, 169 L.Ed.2d 34 (2007); *Marshall v. Knight,* 445 F.3d 965, 969 (7th Cir. 2006); *Corcoran v. Chicago Park* District, 875 F.2d 609, 611 (7th Cir. 1989)**.

### III.  <u>Analysis</u>

**Addus Defendants' motion to dismiss**

**ADA and Title VII claims in Counts I, II, III and IV**

First, the Addus Defendants move to dismiss Counts I, II, III and IV pertaining to the ADA and Title VII for failure to state a claim.  In particular, the Addus Defendants argue that these claims against them "must be dismissed because (1) Plaintiff was employed by DRS, not the Addus Defendants, (2) Plaintiff has not identified any tangible adverse employment action taken by the Addus Defendants

against Plaintiff; (3) Plaintiff did not exhaust his administrative remedies, and (4) any administrative charge of discrimination filed by Plaintiff now would be time-barred." (Doc. 7, p. 6)(footnote omitted).   In response, Tate concedes the merits of his ADA and Title VII claims against these Defendants.  Specifically, Tate responds: "Plaintiff acknowledges that he has not stated and, in fact, never intended to state a claim against the Addus Group for violations of Title VII or the ADA.  Such claims may be filed only against DRS as an institution.  Furthermore, the Plaintiff has determined, through additional research, that he does not have a legal basis at this time to make a claim for common law retaliation, under Illinois law, and he hereby requests the Court to withdraw that Count of his Complaint without prejudice."  (Doc. 26. p. 6).  Thus, the Court **DISMISSES with prejudice** Tate's ADA and Title VII claims against the Addus Defendants contained in Counts I, II, III and IV.  Further, the Court allows Tate to withdraw his Illinois common law claim for retaliation contained in Count V.

### Section 1981 claims contained in Counts II, III, and IV

Section 1981 addresses racial discrimination in contractual relationships.  As amended by the Civil Rights Act of 1991, the statute reads in part:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts … as enjoyed by white citizens….
> (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.
> (c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

**42 U.S.C. § 1981(a)-(c)**.  Section 1981 prohibits discrimination on the basis of race in the making and enforcing contracts, including employment contracts.  ***Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975)**.  To state a claim under § 1981, Plaintiff must show that (1) he is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination interfered with a protected activity under § 1981, including the right to make and enforce contracts.  ***Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006)**.  The substantive legal standards governing claims made under sections 1981 and 1983 are the same.  ***See Malacara v. City of Madison*, 224 F.3d 727, 729 (7th Cir. 2000)**.  ***See Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985)**.

First, the Addus Defendants argue that the 1981 claims must be dismissed based on Tate's failure to identify a contractual relationship impaired by the Addus Defendants; that the allegations do not indicate that the Addus Defendants alleged actions were based on race and that Tate does not allege any adverse employment action.  The Court does not agree.  At this stage in the pleadings, the Court finds that Tate has alleged sufficient facts to state a cause of action against the Addus Defendants pursuant to section 1981.  Tate alleges that he has been an employee of DRS, under contract, since 1994 (Doc. 2, ¶ ¶ 96, 113) ; that the Addus Defendants "were acting in collusion with Ms. Ancell" and that "[t]he false

information for these charges was provided, at least in part, through a conspiracy between Addus, Ms. Evans, Ms. Ancell, Mr. Davis and Ms. Humphrey aimed at harassing and discriminating against Mr. Tate." (Doc. 2, ¶ ¶ 100, 103, 117, 119); that Defendants discriminated against him, in whole or part because he is Hispanic (Doc. 2, ¶ ¶ 99, 102 & 116) and that he suffered adverse employment actions. Thus, the Court denies the motion to dismiss based on this argument.

**Section 1983 claims contained in Counts II, III and IV**

Next, the Addus Defendants argue that the any claims pursuant to Section 1983 that arose prior to March 13, 2006 should be barred by the applicable statute of limitations. Tate responds that the Addus Defendants confuse discrete acts of discrimination, which the two year of statute of limitations is proper, with a hostile environment claim, which a continuing violation analysis is necessary.

The statute of limitations for a suit under § 1983 follows the statute of limitations for a personal injury tort in the state in which the violation occurred. ***Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006)**. In Illinois, the statute of limitations for a personal injury claim is two years. **725 ILCS 5/13-202; *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir.1993)**. In construing the continuing-violation doctrine, the Supreme Court has held that there are two kinds of discriminatory actions: (1) discrete discriminatory acts and (2) acts contributing to a hostile work environment. ***National Railroad Corp. v. Morgan*, 536 U.S. 101, 122 (2002)**. Tate has plausibly pled a claim of hostile work environment. ***Morgan,***

**536 U.S. at 122, 122 S.Ct. 2061**.  Discrete discriminatory acts are not actionable if time-barred even if they are related to timely filed charges of later acts.  **Morgan, 536 U.S. at 113.**

The Seventh Circuit clarified that the continuing-violation doctrine is only applicable where the plaintiff could not reasonably be expected to perceive the violation before the statutory period has run.  **Savory  469 F.3d at 673**.  The Seventh Circuit further acknowledged that **Morgan** forecloses the use of the continuing-violation doctrine for discrete discriminatory acts in **Hildebrandt v. Illinois Dept. of Natural Resources,** 347 F.3d 1014, 1026 (7th Cir. 2003) (**holding that in cases alleging a claim regarding discriminatory pay, each paycheck represents a new violation that starts a separate clock on the statute of limitations**).  Furthermore, the Supreme Court's decision in **Ledbetter v. Goodyear Tire & Rubber Co.,** 550 U.S. 618, 127 S.Ct. 2162 (2007), held that if an employer engages is a series of acts, each of which is intentionally discriminatory, then a fresh violation occurs when each act is committed. **Ledbetter,** 550 U.S. 618, 127 S.Ct. at 2169.

Here, Tate alleges that he was stripped of his long-standing support staff, that his new staff was under the control of Ancell and Evans and that his new staff including Humphrey were instructed to spy on him and harass him.  Therefore, the Addus Defendants arguments are not properly resolved on a motion to dismiss.  The Court denies at this time the Addus Defendants' motion to dismiss Tate's § 1983

claims based on events that occurred prior to March 13, 2006 as time barred.

Next, the Addus Defendants argue that these claims must be dismissed as the Addus Defendants are not state actors and Tate's complaint does not contain any allegations indicating that there was an agreement between Evans and Humphrey and the DRS Defendants to retaliate against Tate for the exercise of his Constitutional rights. Tate contends that he has stated a cause of action against the Addus Defendants under § 1983.

Section 1983 requires that the underlying constitutional deprivation involve someone acting under color of law. *Fries v. Helper*, **146 F.3d 452, 457 (7th Cir. 1998)**. The Supreme Court has defined such an action as the "misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Luger v. Edmonson Oil Co.*, **457 U.S. 922, 929 (1982)**. A state actor is considered present "when the state has cloaked the defendants in some degree of authority," or "when the defendants have conspired or acted in concert with state officials to deprive a person of his civil rights." *Case v. Milewski*, **327 F.3d 564, 567 (7th Cir. 2003)**. Though the requisite state actor is typically a government officer, "§1983 may also be brought to bear on private individuals who exercise government power." *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, **184 F.3d 623, 628 (7th Cir. 1999)**. A private party will be deemed to have acted under "color of state law" when the state either (1) "effectively directs or controls the actions of the private party such that the state

can be held responsible for the private party's decision"; or (2) "delegates a public function to a private entity." *Id.* Only in these ways can a plaintiff establish the necessary "close nexus between the state and the private conduct so that the action 'may be fairly treated as that of the State itself.'" **Wade v. Byles, 83 F.3d 902, 905 (7th Cir. 1996) (quoting** *Blum v. Yaretsky***, 457 U.S. 991, 1002 (1982))**.

Again at this stage of the pleadings, the Court finds that Tate has alleged sufficient facts to state a claim against the Addus Defendants under section 1983. Tate's complaint alleges that Defendants have discriminated against him because he is Hispanic and because he opposed the sexual harassment by Farmer. Tate alleges that Ancell, Evans and Humphrey conspired with each other to spy on him and provide false information against him causing him to be disciplined and suspended repeatedly. Therefore, the Court **DENIES** the Addus Defendants' argument on this claim.

### First Amendment Claims regarding nepotism

Lastly, the Addus Defendants argue that Tate's First Amendment claims based on nepotism should be dismissed because Tate's own allegations demonstrate that his speech was not a motivating factor in any alleged harassment. In his response, Tate essentially concedes this point. Tate's response to this argument is contained in footnote 1 of his brief (Doc. 26, p. 4). Tate states:

> The Plaintiff recognizes, as Addus has duly pointed out,
> that he partially mis-perceived the time sequence of events
> when he told the story in his Complaint. In particular,
> given the timing of the filing of Tate's first *written*

complaint against Addus about nepotism in hiring, it is unlikely that this was a substantial motive for the Addus Group in taking actions against Mr. Tate, since most of the acts against Mr. Tate occurred *before* Mr. Tate filed his formal, written complaint.

(Doc. 26, p. 4). Thus, the Court **DISMISSES** Tate's First Amendment claims against the Addus Defendants based on nepotism.

### DRS Defendants' Motion to Dismiss

### ADA and Title VII Claims

First, the DRS Defendants argue that the Court must dismiss Tate's ADA and Title VII claims contained in Counts I, II, III and IV as Plaintiff did not receive a "Right to Sue" letter. Specifically, the DRS Defendants allege that Tate's complaint does not allege that he filed EEOC charges or that he received a right to sue letter regarding these claims.

The Seventh Circuit has held that the requirement that a plaintiff have filed EEOC charges before suit is not intended to erect an elaborate pleading requirement or to allow form to prevail over substance. ***Cable v. Ivy Tech State College*, 200 F.3d 467, 477 (7th Cir. 1999)**. The Supreme Court has also observed more generally that procedural technicalities should not be used to bar a TItle VII claim. ***Zipes v. Trans World Airlines*, 455 U.S. 385, 397-98 (1982)**. In general parties should be encouraged to plead fulfillment of conditions precedent, however, dismissal is not warranted if it appears otherwise that the required conditions were fulfilled.

Here, Tate does not allege in his complaint that he fulfilled his condition precedent. However, in his response, Tate submitted two right to sue letters from the United States Department of Justice dated December 18, 2007, informing him of his right to sue within 90 days as to his Title VII and ADA claims (Doc. 27-2). Moreover, Defendants do not claim to have been prejudiced by Tate's failure to plead fulfillment of the condition precedent. Because it appears that Tate did fulfill his condition precedent, the Court finds that dismissal on this ground is not proper. As the Court is allowing Tate leave to file an amended complaint, Tate may correct these insufficiencies at that time.

### 42 U.S.C. § § 1983 & 1981 Claims – 11th Amendment Immunity

Next, the DRS and the individual defendants in their official capacities, argue that they are immune from Tate's §§ 1981 and 1983 claims. The Eleventh Amendment is a jurisdictional bar to certain kinds of lawsuits in federal courts against a state. **Dean Foods Co. v. Brancel, 187 F.3d 609, 613 (7th Cir. 1999)**. A state and its agencies are immune from private lawsuits seeking damages or injunctive relief in federal court unless by express and unequivocal language the state waives, or Congress abrogates, the state's Eleventh Amendment immunity. **U.S. COnst. amend. XI; Kroll v. Bd. of Trustees, 934 F.2d 904, 907 (7th Cir. 1991)**. Illinois has not waived Eleventh Amendment immunity for § § 1981 and 1983 claims. **See 745 ILCS 5/1**. And DRS is a division of the DHS which is a state agency, **see 20 ILCS 5/5-15**, and is immune from Tate's § § 1981 and 1983 claims. Thus, the

Court **DISMISSES** Tate's § § 1981 and 1983 claims against DRS in its entirety.

As to Ancell, Standerfer, Farmer and Davis, the Eleventh Amendment bar applies, "when state officials are sued for damages in their official capacities." ***Kentucky v. Graham*, 473 U.S. 159, 169 (1985)(internal citations omitted)**. However, a private party can seek prospective injunctive to abate a continuing violation by federal law by a state official acting in his official capacity. ***Edelman v. Jordan*, 415 U.S. 651, 677 (1974)("a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective relief ... and may not include a retroactive award which requires the payment of funds from the state treasury")**. Therefore, Tate is barred from seeking damages against Ancell, Standerfer, Farmer and Davis in their official capacity on these claims.

### Sovereign Immunity - State Law Retaliation Claim

Next, the DRS Defendants argue that Tate has failed to state a claim under Illinois State law regarding his claim of retaliation for opposing unlawful acts of nepotism. In response, Tate states: "The Plaintiff does not concede any of the specific arguments made by the Defendant regarding sovereign immunity and Illinois law at this time. However, upon further research, the Plaintiff has learned that a claim of retaliation due to a violation of public policy cannot proceed unless the employee blew the whistle on the public policy violation was actually fired. Lesser adverse job actions will not suffice to create a cause of action under Illinois law. Mr. Tate has not been fired (yet). Therefore, he respectfully requests the Court to permit

him at this time to withdraw COunt V of his Complaint, alleging State law retaliation, without prejudice." (Doc. 27, ps. 3-4). Thus, the Court allows Tate to withdraw without prejudice Count V.

## 1983 First and Fourteenth Amendment Retaliation Claims

The DRS Defendants also move to dismiss Tate's § 1983 First Amendment retaliation claims based on the First and Fourteenth Amendments arguing that Tate has failed to allege any connection between the protected speech and any adverse action against him. Specifically, the DRS Defendants contend argue that all of Tate's allegations about retaliation are merely conclusory – that Tate has not alleged that he even engaged in speech about sexual harassment. Tate opposes this argument stating that his complaint alleges that he openly opposed and tried to prevent sexual harassment by his former supervisor, Farmer, against several female employees and that he alleges nepotism in hiring were matters of public concern and not merely private concerns.

In order to state a § 1983 claim for retaliation in violation of the First Amendment in the public employment context, plaintiff must allege: (1) he was engaged in constitutionally protected speech; (2) the protected speech was a motivating factor in the adverse employment action; and (3) the defendant cannot prove by a preponderance of the evidence that the same adverse employment action would have occurred absent the protected speech. ***See Spiegla v. Hull,*** **371 F.3d 928, 935 (7th Cir. 2004)**.

Here, Tate alleges that he spoke out against the sexual harassment and the nepotism in hiring (Doc. 2, ¶ ¶ 170-172, ) and that because he spoke out about these things he was retaliated against by Defendants (Doc. 2, ¶ ¶ 174-175). The Court finds that Tate has alleged a cause of action under the First Amendment for retaliation. Thus, the Court **DENIES** the DRS Defendants' argument on this issue.

**1983 Fourteenth Amendment for Equal Protection or Hostile Work Environment Claims**

Next, Defendants ague that Tate has failed to state a cause of action under the equal protection clause or hostile work environment based on his national origin. Specifically, Defendants argue that Tate's complaint establishes that he was treated more favorably then others who were not Hispanic. Tate responds that he is only required to give notice of his allegations of discrimination and that he has stated a cause of action. The Court agrees with Tate.

Section 1983 creates a cause of action against "[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secure by the Constitution and laws." **42 U.S.C. § 1983**. In order to state a § 1983 claim, Plaintiff must allege that (1) Defendants violated Plaintiff's constitutional rights; and (2) they acted under color of state law. *Pickrel v. City of Springfield,* **45 F.3d 1115, 1118 (7th Cir. 1995);**

*Reichenberger v. Pritchard,* **660 F.2d 280, 284 (7th Cir. 1981)**.  As to a supervisory official, Plaintiff must allege that the supervisor was directly responsible for the constitutional violation and by her acts or omissions "knowingly, willfully, or at least recklessly caused" the violation of Plaintiff's constitutional rights.  ***See McPhaul v. Bd. of Comm'rs of Madison County,*** **226 F.3d 558, 566 (7th Cir. 2000)(internal quotations omitted)**. Refining the inquiry as to a supervisory official, Plaintiff need not allege "direct participation" but merely acts or omissions at the supervisor's "direction," with the supervisor's "knowledge and consent," or exhibiting the supervisor's "deliberate or reckless disregard" for Plaintiff's constitutional rights. ***See Rascon v. Hardiman,*** **803 F.2d 269, 274 (7th Cir. 1986)**.  Moreover, to state his § 1983 claim pursuant to the Equal Protection Clause, Plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular group.  ***See Sherwin Manor Nursing Center, Inc. v. McAuliffe,*** **37 F.3d 1216, 1220 (7th Cir. 1994)**.

       Under the applicable standards, Tate has plead sufficient facts consistent with his theory of the case to survive the motion to dismiss.  Tate has alleged that he was discriminated because he is Hispanic.  Specifically, Tate alleges that because he is Hispanic he had differential discipline involving a number of distinct incidents of dishonest or phony applications of discipline.  At this stage of the pleadings, Tate's allegations are sufficient.

**Intra-corporate Conspiracy Doctrine**

Defendants also contend that to the extent Tate claims Defendants employed by the Illinois Department of Human Services conspired with each other under § 1985, the claim is barred by the intra-corporate conspiracy doctrine. Defendants maintain that Tate failed to incorporate any of the required factual allegations that would support his claim of conspiracy and any claim that these Defendants conspired to harm him are barred. Tate did not respond to this argument. Thus, the Court considers the failure to respond as an admission of the merits of the argument. The Court **DISMISSES with prejudice** Tate's claim against the DRS Defendants to the extent that the claim is brought pursuant to § 1985.

**Loss of Consortium**

Defendants argue that Tate's loss of consortium claim should be dismissed as he cannot bring this claim on his own behalf as it is not proper. Tate responds that he has alleged an intentional tort – that the object of Defendants' unlawful acts was to deny Tate his livelihood, his economically dependent wide was clearly a foreseeable victim and her heart attack a foreseeable consequence. The Court agrees with Defendants. A claim of loss of consortium is a separate cause of action belonging to the spouse of the injured married partner and though derivative in the sense of being occasioned by injury to the spouse, is a direct injury to the spouse who lost the consortium. ***See Jarvis v. Stone,*** **517 F.Supp. 1173 (N.D.Ill.1981) (citing *Arthur v. Arthur*, 296 N.E.2d 912, 913 (Ill. App. Ct.**

**1973))**.  The Court **DISMISSES with prejudice** Tate's loss of consortium claim.

### 42 U.S.C. § 1983 Claims - Statute of Limitations

Next, the DRS Defendants argue that any claims brought pursuant to Section 1983 that arose prior to March 13, 2006 are barred by the statute of limitations.  Tate responds that this is not a disputed issue as all of his discrete allegations of differential discipline fall within the two-year time frame.  As stated previously, the Court finds that it is not proper to address a continuing violation in a motion to dismiss.  Thus, the Court **DENIES** at this time the DRS Defendants' argument on this issue.

### Qualified Immunity

Qualified immunity shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  ***Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)**.  In ***Saucier v. Katz***, the Supreme Court established a two-step inquiry for courts ruling upon the qualified immunity issue .[5]  ***See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)**.  To determine whether an official is

---

[5]The Supreme Court has recently clarified that the ***Saucier*** sequence is not an inflexible requirement.  ***See Pearson v. Callahan*, ---U.S. ----, --- S.Ct. ----, 2009 WL 159429, *9 (Jan. 21, 2009)**.  However, courts are still free to follow the *Saucier* protocol where it facilitates the expeditious disposition of a case.  ***See id.* ("Although we now hold that the *Saucier* protocol should not be regarded as mandatory in all cases, we continue to recognize that it is often beneficial.")**.

entitled to qualified immunity, courts decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* **at 201**.

The DRS Defendants contend that they are entitled to qualified immunity. Specifically, the DRS Defendants argue that Tate "would have to show that to be disciplined for violating his employer's rules and 'micro-managed' by a supervisor (in the case of Defendant Gulley-Ancell), for taking the word of a subordinate supervisor instead of an employee in matter's of that employee's discipline (in the case of Defendant Standerfer), or encouraging supervisors to assist another employee accused of misconduct (in the case of Defendant Davis), would violate Plaintiff's constitutional rights. Plaintiff cannot establish that, and these defendants are entitled to qualified immunity." (Doc. 22, p. 15). Tate responds that Defendants have re-framed his allegations and that is improper. The Court agrees with Tate. The allegations contained in Tate's complaint – disability discrimination, nationality discrimination, hostile work environment and retaliation – are not novel legal theories and were clearing established at the time alleged in the complaint, thus, Defendants are not entitled to qualified immunity.

# IV.  Conclusion

Accordingly, the Court **GRANTS in part** and **DENIES in part** Defendants Addus Healthcare Inc., Kim Evans and Lorie Humphrey's Rule 12(b)(6) motion to dismiss (Doc. 6).  The Court **DISMISSES with prejudice** the ADA claim in Count I against the Addus Group Defendants; the Title VII claim for discrete discrimination in Count II against the Addus Group Defendants; the TItle VII claim for hostile work environment in Count III against the Addus Group Defendants; and the Title VII retaliation claim in Count IV against the Addus Group Defendants. Further, the Court allows Tate to withdraw Count V – the Illinois state common law claim for retaliation.

Additionally, the Court **GRANTS in part** and **DENIES in part** the DRS Defendants' motion to dismiss (Doc. 21).  The Court **DISMISSES with prejudice** Tate's § § 1981 and 1983 against DRS in Counts II, III, IV and V and **DISMISSES with prejudice** Tate's § 1981 and 1983 claims against Ancell, Standerfer and Davis in their official capacities.  The Court allows Tate to withdraw Count V - the Illinois state common law claim for retaliation.  Further, the Court **DISMISSES with prejudice** Tate's loss of consortium claim - Count VII.

Lastly, the Court **ALLOWS** Tate up to and including March 25, 2009 to file an Amended Complaint that comports with this Order, the Local Rules of this Court and the Federal Rules of Civil Procedure.  In the Amended Complaint, Tate

shall designate and divide the remaining claims as to each separate defendant into separate counts.

**IT IS SO ORDERED.**

Signed this 1st day of March, 2009.


/s/    David R Herndon

**Chief Judge**
**United States District Court**