IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

EDGAR TATE,                          )
                    Plaintiff,       )
                                     )
        -vs-                         )           No. 08-200-DRH
                                     )
JO GULLEY ANCELL, et al.,            )
                    Defendants.      )

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COME the Defendants, STATE OF ILLINOIS, DEPARTMENT OF HUMAN

SERVICES, JO GULLEY-ANCELL, JEFF STANDERFER, and EUGENE DAVIS, by and

through their attorney, Lisa Madigan, Attorney General of the State of Illinois, and in support

their Motion for Summary Judgment, submit the following memorandum of law.

**BACKGROUND**

Plaintiff is an employee of the Department of Human Services/Division of Rehabilitation

Services ("DORS").  Plaintiff brings his second Amended Complaint alleging the defendants

violated his rights under the Americans With Disabilities Act ("ADA"), Title VII, §1983 and

§1981.  Specifically, Plaintiff alleges discipline he received in 2007 for sleeping on the job

violated his rights under the ADA because he had been diagnosed with sleep apnea.  He also

alleges he was discriminated against after he "supported" a  co-worker who alleged sexual

harassment by their supervisor.  Plaintiff alleges the discrimination and retaliation relating to

this "support" continued after the supervisor retired well into 2007 and included a conspiracy

between all of the defendants in this case.  Additionally, Plaintiff alleges he was discriminated

against because of his national origin.

The defendants assert that the undisputed facts will show that there was no violation of

the ADA, that any action taken by defendants DRS, Ancell and Standerfer was taken for a non-

discriminatory reason, and that defendant Davis had no personal involvement in any alleged

violation.

**ARGUMENT**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). The mere existence of some factual dispute will not frustrate an otherwise proper summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

**I.      Plaintiff cannot establish a violation of the Americans With Disabilities Act as Alleged in Count I.**

To establish a violation of the ADA, an employee must show: "1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation. *Winsley v. Cook County*, 563 F.3d 598, 603 (7th Cir. 2009).

To prevail on a claim under the ADA, the plaintiff must prove that he is "a qualified individual with a disability." 42 U.S.C. §12112(a); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996). If plaintiff's "condition does not rise to the level of a disability as defined by the ADA, then he cannot prevail on his claim even if [defendant] terminated him expressly because of his condition." *Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 950 (7th Cir. 2000).

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2). Courts use a three-step test to determine if a physical or mental condition meets the definition of a disability:

> First, we must determine whether the condition claimed was a physical or mental impairment. Second, we identify the life activity upon which [plaintiff] relies ... and determine whether it constitutes a major life activity

under the ADA.   Third, we determine whether the impairment substantially limited this major life activity.

*Sinkler v. Midwest Property Management Ltd. Partnership*, 209 F.3d 678, 683 (7th Cir. 2000), *citing Bragdon v. Abbot*, 524 U.S. 624, 631 (1998) (internal citations and quotations omitted).

Plaintiff cannot prove that he had a disability under the ADA or that his sleep apnea substantially limited a major life activity.   Though sleep can be claimed to be a major life activity, and sleep apnea found to be a disability in some individuals, the fact that someone claims to have sleep apnea, or even has been diagnosed with sleep apnea is not dispositive. See *Silk v. City of Chicago*, 194 F.3d 788, 789 (7th Cir. 1999) (The district court concluded that the sleep apnea from which the plaintiff suffered affected the major life activities of breathing and sleeping and was sufficiently severe, it assumed for purposes of summary judgment to qualify under the ADA.).   However, the plaintiff in *Silk* produced medical evidence demonstrating that even when working in the daytime, his oxygen saturation level is only borderline and his blood pressure rises while he sleeps.   *Bond v. Sheahan*, 152 F.Supp.2d 1055, 1066 (N.D. Ill 2001) *citing Silk* at 1997 WL 790598.   Other courts have found no disability where the plaintiff could not produce evidence establishing the severity of the plaintiff's sleep apnea.   *Bond* at 1066 *citing Koleyck-Yap v. MCI Worldcom, Inc*. No 99 CV 8414, 2001 WL 245531 at 10 (N.D. Ill. March 12, 2001) (There were no facts on the record to reveal the plaintiff's oxygen saturation levels while she slept, increased blood pressure levels, or how many hours she slept during the night.)   *Id.*   The court in *Bond* found that the plaintiff, an asthma sufferer who had medical testimony of worsening asthma from awakening short of breath at night, had not shown she was substantially limited in the major life activity of sleep. *Bond* at 1066.

The Seventh Circuit requires evidence that "the limitations on sleeping claimed by the plaintiff are sufficiently prolonged, severe and long-term to warrant classification as a disability." *Squibb v. Memorial Medical Center*, 497 F.3d 775, 784 (7th Cir. 2007).   An inability to sleep for more than three to four hours a night is insufficient to establish a substantial limitation in the

major life activity of sleeping. *Id.* and *Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 757 (7th Cir. 2006).  See e.g., *Rossbach v. City of Miami*, 371 F.3d 1352, 1359 (11th Cir. 2004) (holding that plaintiffs who claimed they could not sleep normally and could not get "a solid night's sleep" were not substantially limited from sleeping); *Colwell v. Suffolk county Police Dept.*, 158 F.3d 635, 644 (2nd Cir. 1998) (holding that a plaintiff, who stated that he "usually get[s] a tough night's sleep," was not substantially limited in the activity of sleeping, because "[d]ifficulty sleeping is extremely widespread" and because the plaintiff had made no showing that his difficulties were any worse than difficulties suffered by a large number of adults).

In this case, in 2007 after he was told he would be disciplined for sleeping on the job, Plaintiff attempted to rebut the charges by producing a sleep study from 2001 indicating he had been diagnosed with sleep apnea.  (Exhibit F).  This diagnosis was made even though he admitted he went to bed at 2:00 a.m. and awoke at 6:00 a.m., and did not "indicate the presence of excessive daytime sleepiness, fatigue or auxiliary symptoms of narcolepsy." (Exhibit F).  Notwithstanding his rebuttal, Plaintiff never cited sleep apnea or any other medical condition in a medical information card he filled out after Jo Ancell became his supervisor in 2005, thus casting doubt on whether he still suffered from sleep apnea.  (Ancell Affidavit; Exhibit I; Tate Dep., p. 91, l. 9 - p. 92, l. 13).  Also shedding doubt on this diagnosis as a disability, there is no evidence that Ms. Ancell, Mr. Standerfer or the proper officials at DRS were aware of the diagnosis or that they knew Plaintiff had difficulty remaining awake, concentrating, or driving prior to the disciplinary action taken as a result of sleeping on the job in February of 2007.  Moreover, Plaintiff admitted he only told his previous supervisor, Beverly Hartnett Young in 2001 that he had sleep apnea, but did not request an accommodation from her or anyone else at DORS.  (Tate Dep., p. 90, l. 2-8).  Plaintiff admits he never told Jo Ancell or Jeff Standerfer that he had sleep apnea, and other than asking for accommodation in his rebuttal to the charges, never formally requested an accommodation from the Department prior to September 11, 2007.  (Tate Dep., p. 96, l. 16 - p. 97, l. 7; Ancell Affidavit).

According to the undisputed evidence, between 2001 and February 2007, Plaintiff did not consider his sleep apnea either a medical problem worth mentioning and prior to September 11, 2007 did not feel the need for a formal request for a reasonable accommodation.

Prior to the 2008 amendments to the ADA which went into effect in January 2009, the Supreme Court described the ADA's standard for qualifying as disabled as "demanding." *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002). "The impairment's impact must also be permanent or long term." *Id.* In *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999) the Supreme Court held that corrective and mitigating measures are to be taken into account when determining if an individual is disabled under the ADA.  As a result, myopic airline pilots were not substantially limited in a major life activity because their vision was fully correctable.  *Sutton*, at 488-89.

Plaintiff could mitigate effects of sleep apnea by losing weight or using a CPAP as recommended by his doctor in 2001; however, Plaintiff claims he does not use CPAP because of his facial hair. (Tate Dep., p. 87, l. 6-23; Exhibit F). There is no indication Plaintiff believed his sleep apnea was severe enough for him to lose weight or shave his facial hair so the CPAP could be used long term.  On this record, Plaintiff cannot show that he considered his sleep apnea was severe enough to substantially limit a major life activity or that anyone else should have considered it severe enough, and he cannot show that he is disabled pursuant to the ADA.

Plaintiff also cannot show that he can perform the essential functions of his job with or without a reasonable accommodation.  "A 'qualified individual with a disability' is defined, in relevant part, as: 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996) (*quoting* 42 U.S.C. § 12111(8)).  Plaintiff bears the burden of proof to show he is a "qualified individual." *Id. citing* 29 C.F.R. App. §1630.2(m).

For purposes of an ADA analysis, Defendants do not dispute Plaintiff's qualifications to perform his job when awake. However, Plaintiff was alleged to have fallen asleep on the job. There can be no dispute that he cannot perform his job as a Rehabilitation counselor while asleep. Additionally, attending various training sessions and seminars, like the ones in which Plaintiff fell asleep, is an essential function of Plaintiff's job. (Ancell Affidavit). Plaintiff's requested accommodations, to be allowed to go to the bathroom when he wants and to get up and move around at will, though not unreasonable, would not have kept him from falling asleep during the training sessions, since Plaintiff admitted he was already receiving these accommodations and apparently he still fell asleep. (Plaintiff's Dep., p. 97, l. 3-22). Likewise, there is no evidence that a "benign work environment" would have somehow kept him awake since he has not explained how the atmosphere at the training sessions was not "benign." There is also no evidence that having a driver would have made a difference, since it is undisputed that he did not fall asleep behind the wheel. Additionally, the doctor's suggestion Tate be excused from attending non-essential meetings would have made no difference, as he would still have fallen asleep during some other work activity had he not been in a meeting. Because Plaintiff cannot perform his job while asleep and because any of the accommodations requested by Plaintiff would not have made a difference, Plaintiff cannot satisfy the second requirement for discrimination under the ADA.

The third element to prove discrimination under the ADA is that the adverse employment action was taken because of the disability or a reasonable accommodation was not given. As stated above, Plaintiff was disciplined, not for having sleep apnea, which limits the quality of sleep a person may get at night, but because he slept on the job. He did not continually fall asleep or fall asleep in the middle of conversations or while driving or when meeting with clients. Rather he fell asleep during training sessions. Falling asleep on the job is a violation of the rules (Ancell Affidavit), and none of the requested accommodations would have made any difference, since the likely cause was not a medical problem caused by sleep apnea, but drowsiness caused by boredom and lack of interest.

Plaintiff also cannot show another, similarly situated individual received a lessor discipline. One way of establishing that the reason for an adverse employment decision was the plaintiff's disability is to identify similarly situated employees who were not disabled and were treated more favorably. *Timmons v. General Motors Corp.*, 469 F.3d 1122, 1126 (7th Cir. 2006). To show that another employee is "similarly situated" "a plaintiff must show that there is someone who is directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Plaintiff alleges that he was treated worse than Stephen Bracewell, who he alleges is similarly situated. A disparate treatment claim under the ADA may be proved either directly or indirectly using the *McDonnell Douglas* burden shifting method. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 924 (7th Cir. 2001) *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973). Under the burden shifting method, plaintiff must satisfy the four elements of a prima facie case by submitting evidence at the summary judgment stage that, if believed, would show that: (1) he is disabled within the meaning of the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment. *Id*.

There is no reason for the burden to shift to defendants to show that they had a non-discriminatory reason for disciplining Plaintiff, as he cannot meet his initial burden to show he was disabled within the meaning of the ADA. He cannot also show that he was meeting his employer's legitimate employment expectations since he was sleeping on the job, which was a violation of the rules. Plaintiff was suspended for 15 days as a result of the infractions, so it's likely he could satisfy the third prong. However, he cannot show that a similarly situated employee received more favorable treatment.

Plaintiff cites Stephen Bracewell as the only similarly situated person who was treated better than he was. (Tate Dep., p. 115, l. 21-24; p. 135, l. 8-13). However, Plaintiff admits he does not know what investigation was done into the allegations that Mr. Bracewell was sleeping on the job. (Tate Dep., p. 128, l. 2-8). Though Mr. Bracewell had been accused of sleeping

on the job, unlike Plaintiff, because the reports of his sleeping were mixed, the charge against Bracewell could not be substantiated.  (Ancell Affidavit).  Additionally, though Plaintiff did not cite any other individuals treated more favorably, it is undisputed that others were treated the same or more harshly than he was.  (Exhibit H; Ancell Affidavit).  For example, at least ten other DHS employees were suspended for 15 days for sleeping on the job, and two others were terminated after the second incident of sleeping.  (Exhibit H).  Plaintiff was treated better than those two individuals, as he was only suspended 15 days for two incidents.  (Exhibit H; Ancell Affidavit).

Because the undisputed facts show that Plaintiff cannot satisfy the elements of his ADA claim against the Department of Human Services, either directly or under a disparate treatment analysis, the Department is entitled to summary judgment on Count  I.

**II.      Plaintiff cannot establish a violation of Title VII based on national origin or retaliation for opposing acts of Sexual Harassment because Plaintiff admits defendants Ancell and Standerfer likely had a non-discriminatory motive for their actions.  Additionally, any discrete acts occurring prior to October 4, 2006 are time barred.**

Tate's EEOC charge of discrimination was filed on July 31, 2007.  (Exhibit L). Because a charge of discrimination must be filed with the EEOC within 300 days of the alleged unlawful employment practices, none of the actions alleged prior to October 4, 2006 are actionable. *Roney v. Illinois Dept. of Transportation*, 474 F.3d 455, 460 (7th Cir. 2007).

Plaintiff claims in Count II that he suffered discrimination because he was Hispanic or Cuban and that he was retaliated against because he opposed acts of sexual Harassment in violation of Title VII.   Courts generally apply the same method of proof to discrimination claims arising under Title VII, race discrimination under §1981, and constitutional violations under §1983.  *See McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009) ("[a]lthough section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." (citations omitted)); *Benders v. Bellows & Bellows*, 515 F.3d 757, 769 n.7 (7th Cir. 2008) ("The same standards for proving intentional

discrimination apply to Title VII and § 1983 equal protection claims.").  As such, because these claims are analyzed under the same general framework they are addressed herein together.

Under the direct method of proof for discrimination, a plaintiff may present direct evidence or circumstantial evidence.  *Rogers v. City of Chicago*, 320 F. 3d 748, 753-754 (7th Cir. 2003).  Direct evidence "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus."  *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000).

In addition to a direct admission, under the direct method of proof, a plaintiff may also attempt to amass circumstantial evidence to establish an inference that the decision maker engaged in intentional discrimination.  *Rogers*, 320 F.3d at 753.

If a plaintiff has no direct evidence of discrimination, he can prove discrimination by the indirect method as set out by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973).  Under the *McDonnell Douglas* test, the plaintiff bears the initial burden of establishing a prima facie case.  *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005).  That test generally requires the plaintiff to show: (1) he is a member of a protected class; (2) that he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) that he was treated less favorably than similarly situated individuals who are not members of his protected class.  *Id.*  The second and fourth prongs of the *McDonnell Douglas* analysis merge in a claim of discriminatory discipline.  *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 592 (7th Cir. 2008).

If a  plaintiff proves a prima facie case of discrimination, the burden shifts to the defendant to offer a permissible, nondiscriminatory reason for the adverse employment action.  *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007) (*citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).  When this burden is met,  plaintiff must demonstrate that the defendant's purported reasons are a pretext for discrimination.  *Reeves*, 530 U.S. at 143.  "The ultimate burden of persuading the trier of fact that the defendant

intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Id.,* *quoting Texas Department of County Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well considered.  *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000).  To show pretext, a plaintiff must show that (1) the employer's nondiscriminatory reason was dishonest and (2) the employer's true reason was based on a discriminatory intent.  *Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007).   To do that, a plaintiff can identify weaknesses, implausibilities, inconsistencies, or contradictions in the defendant's purported reason such that a jury could find defendant's explanation unworthy of credence and hence infer that the defendant did not act for the asserted nondiscriminatory reasons.  *Reeves*, 530 U.S. at 143.  A court's role is to prevent discrimination, not to act as a super personnel department that second guesses employers' business judgment.  *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181(7th Cir. 2001).  Even if plaintiff demonstrates evidence of pretext, if there is absolutely no other evidence of intentional discrimination, not one racist comment or harassment, plaintiff has still failed to satisfy the burden of proving intentional discrimination by the defendant.  *Olson v. Marshall & Ilsley, Corp.*, 267 F.3d 597, 602 (7th Cir. 2001).

Title VII also makes it unlawful for an employer to retaliate against an employee for opposing a practice made unlawful by the Act.  *Fine v. Ryan International Airlines*, 305 F.3d 746m 751 (7th Cir. 2002) *citing* 42 U.S.C. §2000e-3(a).  In order to prove a claim of retaliation, the plaintiff must show first that he engaged in a statutorily protected expression.  *Id.* at 751-752.  Though a plaintiff does not have to prevail on a Title VII discrimination claim or have opposed an action that, in fact, violated Title VII to win a retaliation claim, he must have "reasonably believed in good faith that the practice he opposed violated Title VII."  *Id.* at 752 *quoting Alexander v. Gerhardt Enters., Inc.*, 40 F.3d 187, 195-196 (7th Cir. 1994); *see also Magyar v. Saint Joseph Regional Medical Center*, 544 F.3d 766, 771 (when instituting the

grievance, a plaintiff needs to only show that he had a "sincere and reasonable belief" that he was opposing an unlawful practice).

In order to prove Title VII retaliation, a plaintiff has two available methods; "direct" and "indirect." *Hottenroth v. Villlage of Slinger*, 388 F.3d 1015, 1028 (7th Cir. 2004). Under the direct method, the plaintiff must show that he engaged in statutorily protected activity, that he suffered an adverse action by the employer, and there was a causal connection between the two. *Nichols v. Southern Illinois University-Edwardsville*, 510 F.3d 772, 785 (7th Cir. 2008; re-hrng en bank denied February 28, 2008). Under the indirect method, in order to establish a prima facie case of retaliation, the plaintiff must show that (1) they engaged in a statutorily protected activity; (2) they met the employer's legitimate expectations; (3) that they suffered an adverse employment action; and (4) they were treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id.* Under either method, the plaintiff must show that but-for the protected activity, he would not have faced the complained of adverse employment action. *See Gross v. FBL Financial Servs.*, 129 S.Ct. 2343 (2009) *see also Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) ("This means but-for causation. [citations omitted] Some decisions . . . say that a plaintiff just needs to show that his speech was a motivating factor in defendant's decision. These decisions do not survive *Gross*, unless a statute . . . provides otherwise, demonstrating but-for causation is part of the plaintiff's burden in all suits under federal law."). Plaintiff cannot meet his burden under either method.

All discrimination, whether analyzed under a direct or indirect method of proof, requires at some point, a showing that the adverse employment actions or the acts alleged to be retaliatory were, in fact, done for a discriminatory reason or in retaliation for protected activity. In this case, once defendant Farmer retired in 2004, all the alleged discriminatory acts, such as the discipline and hiring and firing of staff, were alleged to have involved defendants Standerfer and Ancell. Usually the denial of the defendants that they engaged in any discriminatory activity, conspired with anyone or took any action against Plaintiff for an improper motive would not be sufficient to entitle them to summary judgment. (Ancell Affidavit;

Standerfer Affidavit; Davis Dep. pp 34-35).   However, in this case, because Plaintiff's own admissions support the defendants' assertions, summary judgment is proper.

Plaintiff admits in his deposition that defendants Standerfer and Ancell acted because Al Farmer, through defendant Davis, had made Jeff Standerfer's life miserable.  (Tate Dep., pp. 79-81).  Plaintiff opined that after defendant Farmer retired, defendant Standerfer did not forget and used Jo Ancell to "get back at the very people who he thought had made his life difficult through Mr. Davis."  (Tate Dep., pp. 79-81).  Again, Plaintiff could only speculate as to any communication between defendants Ancell and Standerfer and can only speculate as to their motives.  (Tate Dep., p. 81, l. 13 - p. 82, l. 4).  The allegations of conspiracy Plaintiff alleges all of the defendants engaged in also cannot hold water.  Plaintiff admits he has no knowledge of any conversations between or among any of the defendants regarding discriminating against and/or harassing him or that defendants Ancell, Standerfer and Davis ever conspired against him.  (Tate Dep., p. 71, l. 15 - p. 73; p. 110, l. 10-17).  Plaintiff likewise has no evidence to support his claim that defendants Ancell and or Standerfer allowed Kim Evans of Addus to hire other people to spy on him or that Lorie Humphrey was told to spy on him.  (Tate Dep., p. 155, l. 14 - p. 156, l. 3).  The allegation against Ms. Humphrey arose from Plaintiff's belief that she was working in the Anna office when she should have been working in the Carbondale office.   (Tate Dep., p. 82 & 83).  As defendant Ancell explained, Ms. Humphrey was needed in the Anna office due to the redetermination initiative that created additional work for the Anna office.  (Ancell Affidavit).   Because all of the allegations that actions taken against him by defendants Ancell, Standerfer, Davis and after October 4, 2006 against defendant DRS were admitted by Plaintiff to not have been prompted by a desire to discriminate or retaliate against Plaintiff for his national origin or protected activity, summary judgment is proper in favor of all of these defendants.

For purposes of this motion, there is no dispute that Plaintiff was Hispanic, and that suffices as a protected class under Title VII.  However he cannot satisfy the other elements of the discrimination claim. Plaintiff admits that defendants Ancell and Standerfer, who were

involved in the discipline at issue never made any derogatory comments about Plaintiff being Hispanic.  (Tate Dep., p. 130, l. 23 - p. 131, l. 10).

Plaintiff admits his national origin discrimination complaint is based on the fact that Anthony Jones did similar work, but on numerous occasions was not treated in the same manner as Plaintiff.  (Tate Dep. p. 115, l. 10-20).  Apparently the discrimination took the form of an oral reprimand in 2006 for calling instead of writing a client; a five-day suspension in December of 2006 based on "phony" allegations of failing to provide a Summary of Evidence ("SOE") to a hearing officer; a fifteen-day suspension in Spring of 2007 for falling asleep during a training session; and a five-day suspension in August of 2007 for failing to mail a SOE packet to a hearing officer.  (DOC 63, ¶ 93).

When a customer appeals a decision by DORS to deny, reduce or terminate service, the counselor in charge of the case, such as Plaintiff, is required to provide the hearing officer and the customer a document called a Summary of Evidence that lays out the reasons behind the Department's determination.  This summary is required by the Administrative Code to be provided to the client and the hearing officer three days prior to the hearing.  (Ancell Affidavit; Exhibits E and G).

The activities for which Plaintiff was disciplined, the failure to provide Summaries of Evidence to hearing officers as required, the failure to attend hearings as required, and the failure to remain awake for training sessions belie the second element, that Plaintiff was meeting the legitimate expectations of his employer.  Moreover, notwithstanding Plaintiff's claims that the charges at least in 2006 were "phony" and the result of a conspiracy, Plaintiff admitted he called instead of wrote a client (Tate Dep., pp. 118-119), that the evidence packet did not reach the hearing officer as required in August of 2007 (Tate Dep., p. 121, l. 22 - p. 24), and that he did not call into a hearing with Ms. Mastrandrea. (Tate Dep., p. 118-119).

Additionally, there were numerous other occasions that Plaintiff failed to meet his employer's legitimate expectations by completing inaccurate customer assessments, and by being rude and aggressive with customers and staff.  (Ancell Affidavit; Exhibit A).  He also

failed to meet his employer's legitimate expectation by failing to properly score the client assessments and failing to accurately record interactions with customers in the file. (Exhibit B). Legitimate expectations were not met when he used inappropriate terminology when interacting with staff and clients, failing to follow his supervisor's instructions, and inappropriately denying benefits to a customer over the phone for services over which he had no authority. (Ancell Affidavit; Exhibits C and D).

For purses of this motion, it is undisputed that Plaintiff's two-day suspension that he ultimately received in December of 2006, the fifteen-day suspension for sleeping in February of 2007 and the five-day suspension in August of 2007 were adverse employment actions and would satisfy the third element of the claim.

However, Plaintiff cannot meet the fourth element, that there were similarly situated non-Hispanic employees who were treated better than himself. Plaintiff admits he does not know any non-Hispanic individuals who failed to send the Summary of Evidence Packets, and does not know whether Tony Jones, the only person he claims was similarly situated and upon whom he bases his claim, or any other non-Hispanic failed to send SOE packets or what, if any, discipline they received. (Tate Dep., p. 125, l. 20 - 126, l. 20). He also admits, as previously discussed, that he does not know what investigation was done into Stephen Bracewell's sleeping on the job allegation to establish whether he was truly similar in all manner to himself. Additionally, though Plaintiff believes the Carbondale office was treated better than the Anna office because he was Latino, in that the Carbondale office had UPS service and Anna did not, (Tate Dep., p. 129, l. 16-p. 130, l. 10), he admits the entire Home Services Provider team was treated worse, including Ms. Tuttle, who was Caucasian, and Ms. Green, who is African-American. (Tate Dep., p. 129, l. 16 - p. 131, l. 12). Such allegations are not sufficient to show that the acts were taken because Plaintiff was Hispanic. As it is Plaintiff's burden to establish the essential elements of his claim, his failure to do so is fatal to his claim, and the defendants are entitled to summary judgment on the national origin claim.

Similarly, notwithstanding his admissions, Plaintiff cannot show that he engaged in protected activity or that any of the persons making the decisions to discipline him did so because he engaged in protected activity.

Plaintiff alleges in his complaint the protected activity was supporting co-workers who believed they were being sexually harassed by defendant Farmer in 2003. (Tate Dep., p. 15, l. 19 - p.16). However, he admits he never confronted defendant Farmer or even speak to him about the allegations, the EEOC charges that were filed, or the fact that he supported or assisted the co-workers. (Tate Dep., pp. 15-17). He also did not initiate the harassment allegations or file a report with the EEOC about the allegations. (Tate Dep., p. 15 and 16). He alleges that he chaperoned the co-workers when they came in and out of the building, but never told the supervisor about that either. (Tate Dep., p. 17). He also admits that he never notified defendants Davis or Ancell about the alleged harassment of his co-workers (Tate Dep., p. 143 - 144), though he believes he mentioned the allegations to defendant Standerfer when he visited the Anna office. (Tate Dep., p. 143, l. 4-19).

To the extent the mere act of "supporting" a fellow employee in filing an EEOC claim for harassment without doing anything in furtherance of the claim or otherwise speaking out would be considered protected activity, he still cannot prevail unless he can show that any of the decision makers or the Department itself had any information about his part in the activity. Plaintiff cannot show a causal connection between any of the actions he alleges were taken against him and his "support" of his co-worker in 2003-2004. Certainly he can show no nexus between his support of the women in 2003-2004 and any discipline in 2006-2007. See *Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir. 1992) (four months between the alleged protected activity and the alleged discriminatory acts, standing alone, is insufficient to raise an inference that the protected activity was the cause of the alleged discriminatory act). Without such a causal connection and without proof that the decision makers were aware of the protected activity, the claim for retaliation is doomed under either method of proof. *Nagle v. Village of Calumet Park*, 554 F.3d. 1106, 1121-22 (7th Cir. 2009) ("in order to establish retaliation

pursuant to Title VII, the employer must have had actual knowledge of the protected activity in order for its decisions to be retaliatory; it is not sufficient that an employer could or even should have known about an employee's complaint").   Plaintiff admitted he did not tell Farmer, Ancell or Davis about the sexual harassment, and though he alleges he may have told defendant Standerfer about the sexual harassment, there is no evidence that anyone knew of his allegedly "protected" actions, which are the only ones he has standing to pursue.

Notwithstanding, even assuming that Plaintiff's activities were protected and the defendants knew about Plaintiff's activity, Plaintiff cannot show that **but for** the protected activity, he would not have been disciplined or that the reasons given for his discipline were pretextual. Plaintiff was disciplined for failing to follow supervisory instructions, which included failing to send summaries of evidence as required and to attend hearings as required.  (See Ancell Affidavit).  He also was disciplined for sleeping on the job in violation of employee rules. (See Ancell Affidavit).  Not withstanding that the plaintiff admitted to the activities alleged, the defendants have provided ample evidence to show that Plaintiff was guilty of the alleged violations and that the allegations were not fabricated by the defendants, rather they were reported in many instances by other individuals who Plaintiff has not sued and who are alleged to have reason to retaliate against him.  He also cannot establish that others who had not engaged in the allegedly protected activity were treated more favorably under the same circumstances.   Without proof that he engaged in protected activity or that there was knowledge of his activity and a causal connection between the activity and the discriminatory action, Plaintiff cannot prevail.

**III.   Plaintiff cannot sustain his claim for retaliation pursuant to the Equal Protection Clause under §1983.**

In Counts VI, V and VI, Plaintiff alleges the Equal Protection Clause of the Fourteenth Amendment prohibits discrimination based on national origin.  Plaintiff alleges that the actions taken by the defendants were to "discriminate against Mr. Tate because he is Hispanic, and in whole or in part to retaliate against Mr. Tate for opposing alleged acts of sexual harassment

by Mr. Farmer . . . "  (Complaint ¶¶ 119, 134, and 149).  "[T]he right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause." *Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2004).  This includes cases such as Plaintiff's where he alleges he was treated differently because he engaged in protected activity. *Id*.  Therefore, to the extent Plaintiff alleges he was discriminated against or retaliated against because he supported his co-worker in her sexual harassment claim, his claim fails and the defendants are entitled to summary judgment in their favor.

**IV.    Defendant Davis does not have the requisite personal involvement in the alleged improper conduct for liability under §1983 or §1981.**

In order to impose individual liability for a constitutional violation, a plaintiff must prove that the defendant had some personal responsibility for the alleged violation. *Duckworth v. Franzen*, 780 F.2d 645 (7th Cir. 1985).  This is true for suits brought under both §1983 and §1981.  See *also Musikiwamba v. Essi, Inc., et al.*, 760 F.2d 740, 748 (7th Cir. 1985).

In this case, Plaintiff admits that he never met defendant Davis, and though he alleges Davis directed Standerfer to take action against Plaintiff based on Farmer's request, he admits he has no first hand knowledge that Davis was involved with Al Farmer.  (Tate Dep., p. 80, l. 3-10; p. 131, l. 6-10).  He also admits he never notified defendant Davis, who was the Assistant to Secretary of the Department of Human Services, of the alleged sexual harassment.  (Tate Dep., p. 143, l. 20-25; Davis Dep.).  Plaintiff bases his frivolous allegations against Davis on the fact that he was told by other people that phone calls from Davis were put through to Mr. Farmer.  (Tate Dep., p. 80, l. 3-16).  However, he admits he has no knowledge of the content of any of the conversations.  (Tate Dep., p. 80, l. 3-16).  He also admits that he has no information of the content of any conversations that may have taken place between Jeff Standerfer and Eugene Davis, and does not know of any conversation between Davis and any other defendant regarding harassing or discriminating against Plaintiff. (Tate Dep., p. 80, l. 17-25; p. 133, l. 16 - p. 134, l. 10).  There also is no evidence that defendant Davis took part in any of the actions Plaintiff alleges were discriminatory.  Because Plaintiff's own testimony

establishes defendant Davis had no personal involvement in the alleged constitutional violations, he is entitled to summary judgment in his favor on all counts.

**V.    Plaintiff cannot prove defendants Ancell or Standerfer violated his rights under §1981 or the Equal Protection Clause of the Fourteenth Amendment by engaging in racial discrimination as alleged in Counts IV, V, and VI.**

§1981 and the Equal Protection clause of the Fourteenth Amendment address racial discrimination.  See 42 U.S.C. §1981(a)(West 2010)(emphasis added). Since Plaintiff cannot establish the elements of a racial or national origin discrimination claim under Title VII, and because the analysis is the same, he also cannot establish racial discrimination under §1981 or §1983 and the defendants are entitled to summary judgment in their favor on these claims as well.

**VI.   Plaintiff cannot prove he was the victim of a hostile work environment under Title VII, §1981, or §1983 as alleged in Counts II, IV, V, and VI.**

Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment...." *Harris v. Forklift Systems Inc.*, 510 U.S. 17, 21 (1993).  To succeed on a hostile work environment claim, Plaintiff must prove "(1) that her work environment was both objectively and subjectively offensive; (2) that the harassment was based in her membership in a protected class; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability." *Dear v. Shinseki*, 578 F.3d 605, 611 (7thCir. 2009). Factors that may be considered in deciding whether the environment is hostile or abusive "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691-92 (7th Cir. 2005) (citing, *Harris*, 510 U.S. at 23).

By its definition a hostile environment claim has to be based on the plaintiff's protected status.  In this case, Plaintiff is not a woman and has not alleged he was the subject of sexual harassment.  He also has not alleged that the alleged sexual harassment of which Ms. Green

complained continued after Mr. Farmer's retirement at the end of 2004.  Therefore, the only hostile environment claim that Plaintiff could bring and that could be attributable to these defendants is a claim for hostile work environment based on national origin.

Here, Plaintiff's allegations for hostile environment include false accusations of misconduct by Farmer, repeated criticisms by Ancell and a denial of support services by Ancell. (Complaint generally).  They also include a conspiracy to "isolate" Plaintiff by stripping him of support staff, and a claim that Ancell instituted false disciplinary charges in conspiracy with Addus employees.  He also alleges Ancell invented non-existent disciplinary charges such as communicating with a client by phone and falling asleep at a training session.  He alleges defendant Ancell applied these charges solely to Plaintiff and not to any non-Hispanic employee.  Plaintiff alleges defendant Ancell found him guilty of the charges even when factually false, and that defendant Standerfer collaborated and conspired with defendant Ancell though he knew them to be false.  Finally, Plaintiff alleges this hostile work environment was evidenced by the fact that his punishments exceeded the limits of punishment given to white employees in excess of the progressive discipline limits set by plaintiff's union. (Complaint generally).

Though Plaintiff alleges these actions were taken against him, in part, because he is Hispanic, as has been shown previously, Plaintiff has no direct evidence of discrimination, and no evidence to show that non-Hispanics were treated better than him under the same circumstances.  He cannot establish that the charges for sleeping on the job were created by Ancell because the prohibition against sleeping on the job is found in the Department's employee handbook.  (Ancell Affidavit).  He also cannot establish that his discipline was excessive or violated policy as the record is replete with times that Plaintiff was counseled, both verbally and in written form about his behavior prior to any  suspensions.  (Ancell Affidavit; Exhibits A - D).

Also, to the extent he claims the actions were part of a conspiracy, as discussed supra, he admits he has no such evidence.  Because none of the actions that Plaintiff complains

created the hostile environment were for the purpose of discriminating against Plaintiff because of his national origin, Plaintiff's hostile work environment claim must fail and the defendants are entitled to summary judgment in their favor.

Respectfully submitted,

STATE OF ILLINOIS, DEPARTMENT OF HUMAN SERVICES, JO GULLEY-ANCELL, JEFF STANDERFER, and EUGENE DAVIS,

Defendants,

LISA MADIGAN, Attorney General, State of Illinois

Kelly R. Choate, #6269533
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62706
(217) 782-9026

Of Counsel.

Attorney for Defendants,

By:   /s/ Kelly R. Choate
KELLY R. CHOATE
Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

EDGAR TATE,                               )
                                          )
          Plaintiff,                      )
                                          )
     -vs-                                 )          No. 08-200-DRH
                                          )
JO GULLEY ANCELL, et al.;                 )
                                          )
          Defendants.                     )

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2010, I electronically filed a Memorandum of Law in Support of Defendants' Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

Richard S. Fedder                     Carmen N. Couden
rfddr@yahoo.com                       ccouden@foley.com


Joanna Gunderson
jgunderson@atg.state.il.us



                              Respectfully Submitted,


                               /s/ Kelly R. Choate
                              Kelly R. Choate, 6269533
                              Assistant Attorney General
                              500 South Second Street
                              Springfield, Illinois  62706
                              (217) 782-9026  Phone
                              (217) 524-5091  Fax
                              E-Mail:  kchoate@atg.state.il.us