## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**EDGAR TATE,**

**Plaintiff,**

**v.**

**JO GULLEY ANCELL,**
**et al.,**

**Defendants.**                                                   **No. 08-0200-DRH**

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

## I. Introduction and Background

Now before the Court are defendants' motions for summary judgment (Docs. 86, 87 & 90).  Tate opposes the motions (Doc. 103).  Based on the following, the Court grants the motions for summary judgment.

Originally, Edgar Tate filed a seven-count complaint against defendants Jo Gulley Ancell, Jeff Standerfer, Al Farmer, Eugene Davis, Lorie Humphrey, Kim Evans, Addus Home Health Care, and the Department of Human Services ("DHS"), Division of Rehabilitation Services ("DRS") (Doc. 2).  The complaint contained claims for violations of the Americans with Disability Act ("ADA") 42 U.S.C. § 12101, *et seq*.; national origin discrimination based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Equal Protection Clause of the Fourteenth Amendment made actionable through 42 U.S.C. § 1983; hostile work environment based upon national

origin in violation of Title VII, 42 U.S.C. § 1981, and the Equal Protection Clause of the Fourteenth Amendment made actionable through 42 U.S.C. § 1983;  retaliation for opposing sex discrimination in violation of Title VII, 42 U.S.C. § 1981, and the Equal Protection Clause of the Fourteenth Amendment made actionable through 42 U.S.C. § 1983; retaliation for opposing unlawful acts of nepotism; First Amendment retaliation for opposing sexual harassment and nepotism and loss of consortium.

On March 9, 2009, the Court entered an Order granting in part and denying in part two motions to dismiss filed by the parties (Doc. 34).  Specifically, the Court dismissed with prejudice the ADA claim in Count I against the Addus Group defendants; the Title VII claim for discrete discrimination in Count II against the Addus Group defendants; the Title VII claim for hostile work environment in Count III against the Addus Group defendants; and the Title VII retaliation claim in Count IV against the Addus Group defendants.  The Court also allowed Tate to withdraw Count V – the Illinois state common law claim for retaliation.  Further, the Court dismissed with prejudice Tate's § § 1981 and 1983 against DRS in Counts II, III, IV and V and dismissed with prejudice Tate's § 1981 and 1983 claims against Ancell, Standerfer and Davis in their official capacities.  In addition, the Court dismissed with prejudice Tate's loss of consortium claim - Count VII.  Lastly, the Court allowed Tate leave to file an amended complaint.

Thereafter, on December 30, 2009, Tate filed his Second Amended Complaint

(Doc. 63).[1]  This complaint contains ten counts against defendants: Count I - an ADA claim against DRS; Count II - a national origin and retaliation claim for opposing sexual harassment against DRS in violation of Title VII; Count III - a claim for hostile work environment based on national origin and retaliation for opposing sexual harassment against DRS in violation of Title VII; Count IV - a claim for discrete discrimination and hostile work environment discrimination in violation of § 1981 and the Equal Protection Clause of the Fourteenth Amendment (made actionable through 42 U.S.C. § 1983) against Ancell; Count V - a claim for discrete discrimination and hostile work environment discrimination in violation of § 1981 and the Equal Protection Clause of the Fourteenth Amendment (made actionable through 42 U.S.C. § 1983) against Standerfer; Count VI - a claim for discrete discrimination and hostile work environment discrimination in violation of § 1981 and the Equal Protection Clause of the Fourteenth Amendment (made actionable through 42 U.S.C. § 1983) against Davis; Count VII - a claim for discrete discrimination and hostile work environment discrimination in violation of § 1981 and the Equal Protection Clause of the Fourteenth Amendment (made actionable through 42 U.S.C. § 1983) against Farmer; Count VIII - a claim for discrete discrimination and hostile work environment discrimination in violation of § 1981 and the Equal Protection Clause of the Fourteenth Amendment (made actionable through 42 U.S.C. § 1983) against Addus; Count IX - a claim for discrete

---

[1]Despite being ordered by the Court to separate the claims into separate counts in the amended complaint, Tate did not do so.

discrimination and hostile work environment discrimination in violation of § 1981 and the Equal Protection Clause of the Fourteenth Amendment (made actionable through 42 U.S.C. § 1983) against Evans; and Count X - a claim for discrete discrimination and hostile work environment discrimination in violation of § 1981 and the Equal Protection Clause of the Fourteenth Amendment (made actionable through 42 U.S.C. § 1983) against Humphrey.

## II.  Facts[2]

The Department of Human Services ("DHS"), Division of Rehabilitative Services ("DRS") is a public agency run by the state of Illinois.  DRS provides both vocational rehabilitation services and home services to eligible persons with disabilities.  Edgar Tate is a Cuban born Hispanic male and has sleep apnea.  He has been a rehabilitation counselor for DRS, in the Anna office, since February 1, 1993.  In 1998, he was promoted to rehabilitation counselor- senior.  From January 2003 to December 2004, Al Farmer was Tate's immediate supervisor.  Farmer retired in December 2004.  From January 2005 to the present, Jo Gulley Ancell has been Tate's immediate supervisor.  Jeff Standerfer is the Assistant Bureau Chief ("ABC") for DRS.  He was Farmer and Ancell's immediate supervisor.  Eugene Davis was the personal assistant to Carole Adams, who was the head of DHS.

Addus is a provider of high-quality health services and supplemental health

---

[2]The Court has carefully reviewed the parties' recitations of the facts.  The Court has attempted to limit its discussion to those facts which are material to the issues in this case based upon the applicable law and those not in dispute.

care staffing and provides comprehensive health care services including skilled nursing, personal care aides, rehabilitation and in-home support services to over 40,000 individuals annually. Addus provided support staff and Licensed Practical Nurses, by contract, for the DRS's offices in Carbondale and Anna, Illinois. Addus has an office located in Marion, Illinois, which is managed by Agency Director Evans. Pursuant to Addus's contract with DRS, Evans hired Humphrey as a Licensed Practical Nurse ("LPN") to fill an opening at DRS's Carbondale, Illinois office. Humphrey learned about the opening at DRS's Carbondale office from Tate and submitted an application for employment at his urging. Ancell made the decision to have Addus hire Humphrey for the LPN position. For a period of time in or about November 2005, Ancell assigned Humphrey to work at DRS's Anna office so that she could assist with the mandatory client reassessments as a part of a state-wide re-determination initiative.

Veronica Green (now Veronica Bowden) was Tate's rehabilitation case coordinator in December 2003.

In November or December 2003, Green complained that Farmer had sexually harassed her. Tate claims that he supported and encouraged her to file an EEOC complaint against Farmer. In December 2003, Vicky Tuttle, another employee, filed an EEOC charge alleging that Farmer sexually harassed Green. Tate never told Farmer that he assisted Green in filing her sexual harassment complaint with the EEOC. Tate never spoke with Farmer about Green's EEOC complaint. Tate never spoke with Farmer about his support for Green's EEOC complaint or her sexual

harassment allegations.

On or about March 8, 2006, Tate called a client by telephone to discuss an issue rather than contacting the client in writing as he had been directed by Ancell. Thereafter, Tate received an oral reprimand for failure to follow supervisory instruction. Prior to that incident, Tate received counseling for failure to follow supervisory instruction and on November 5, 2005, he received counseling for failure to follow supervisory instruction.

In September 2006, Tate failed to provide a required Summary of Evidence to a hearing officer three working days in advance of a scheduled appeal hearing as required by administrative code section 510.105(d) and as directed by Ancell. Tate also failed to represent DRS at that hearing and this failure to appear resulted in a ruling by default and, thus, thousands of agency dollars were paid to a client who previously had been determined ineligible for services. On November 15, 2006, while DRS's disciplinary decision related to the September 2006 incident was still pending, Tate failed to submit another Summary of Evidence for another appeal hearing. This hearing was postponed by the client. On November 13, 2006, Ancell emailed Tate and instructed him to work with Humphrey on the Summary of Evidence for a November 30, 2006 hearing. Ancell also instructed Tate to provide a draft of the Summary of Evidence to her by November 20, 2006. Humphrey notified Tate that she would be in the Anna office all day on November 16, 2006 to meet with him and to prepare the Summary of Evidence. The meeting between Tate and Humphrey did not take place. Humphrey faxed Tate a 9-page Summary of Evidence on November

17, 2006. Tate submitted only a 1-page Summary of Evidence to Ancell and he did not include the information that Humphrey provided him.

Shortly thereafter, Ancell charged Tate with failing to follow supervisory instructions and negligence in performing his job duties. After the disciplinary hearing on these incidents, Ancell, after consulting with the her supervisor and members of the Bureau of Labor Relations, recommended that Tate be suspended for 5 days for failing to follow supervisory instructions and negligence in the performance of his duties in violation of the DHS Employee Handbook, Section V, Employee Personal Conduct. After reviewing the facts and the documents related to the September and November Summary of Evidence incidents, Laurie Tappenbeck of the Bureau of Labor Relations approved the 5-day suspension for Tate. Following a grievance by the union, Tate's suspension was reduced to two days.

In February 2007, Tate fell asleep during a training seminar. Tate was snoring and had to be nudge to be awakened. Based on this, Tate was charged with sleeping on duty in violation of the DHS Employee Handbook, Section V, Employee Personal Conduct, Sleeping on Duty. Tate admitted to sleeping during the February 8, 2007 training seminar and numerous witnesses provided written statements confirming that Tate was sleeping during the training seminars. Based on Tate's admission, the witnesses statements, and discussions with Labor Relations and DRS management, Ancell recommended that Tate be suspended for 15 days for sleeping on the job. After reviewing the incidents, Tappenbeck approved the 15-day suspension for sleeping on duty.

On May 17, 2007, Tate failed to submit another Summary of Evidence to the hearing officer three working days prior to the hearing as instructed by Ancell and as required by the administrative code section 510.105(d). Witnesses statements were provided by LPN Sandy Kohler and Rehabilitation Case Coordinator Patricia McIntosh. Based on these statements, Ancell recommended that Tate receive a five-day suspension. After reviewing the facts and documents, Tappenbeck approved the five-day suspension on August 8, 2007.

### III. <u>Summary Judgment Standard</u>

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56©. A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States,* 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. Proc. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

The Court recognizes that "summary judgment is frequently inappropriate in discrimination cases because intent, and therefore credibility, is often a crucial issue." *McMillian v. Svetanoff,* 878 F.2d 186, 188 (7th Cir. 1989).  While the Court approaches the question of summary judgment with "special caution" in discrimination cases, "if a plaintiff in a discrimination case is unable to present any evidence to create a genuine issue as to whether the defendant's articulated reason for the firing is the real reason, then summary judgment will be appropriate." *Id.* at 188-89; *see also Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988).

## IV.  <u>Analysis</u>

**ADA claim**

Defendant DRS argues that Tate cannot prove that he had a disability under the ADA or that his sleep apnea substantially limited a major life activity.  The Court agrees with DRS.

The ADA protects "qualified individuals with a disability" from discrimination in their employment, the hiring process, or promotions.  42 U.S.C. § 12212(a)[3];

---

[3]Significant changes to the ADA took effect on January 1, 2009, after the events at issue occurred.  *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). Congress did not express its intent for these changes to apply retroactively, and so courts look to the law in place prior to the amendments.  *Fredericksen v. United States Parcel Serv., Co.*, 581 F.3d 516, 521 n.1 (7th Cir. 2009).  Similarly, changes to the 29 C.F.R. §§ 1630.1 and 1630.2 went into effect on May 24, 2011.  *See* Regulations to Implement the Equal Employment Provisions of the Americans With Disabilities Act, as Amended, 76 Fed. Reg. 16978-01 (March 25, 2011) (to be codified at 29 C.F.R. § 1630).  Nothing in those regulations clearly states they are to have retroactive effect; in fact, the revisions were necessitated by the Amendments Act. *See id.* (noting the Amendments Act "changes the way . . . statutory terms should be interpreted in several ways, therefore necessitating revision of the prior regulations and interpretive guidance").  Because a desire for retroactivity is not clearly expressed in the regulation, the next consideration is whether application of the regulation would have a retroactive effect, meaning it would impair vested rights or attach new consequences to completed transactions.  *See*

*Rooney v. Koch Air, LLC*, 410 F.3d 376, 380 (7th Cir. 2005).  The statute defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8). To establish a violation of the ADA, an employee must show: "1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation."  *Winsley v. Cook County*, 563 F.3d 598, 603 (7th Cir. 2009).

An individual can prove he is disabled for ADA purposes in one of three ways: (1) he has a physical or mental impairment that substantially limits one or more major life activities; (2) he has a record of such an impairment; or (3) he is regarded as having such an impairment by his employer.  42 U.S.C. § 12102(2); *Sutton v. United Air Lines*, 527 U.S. 471, 478 (1999).  A person is "regarded as disabled" when the employer, rightly or wrongly, believes that he has an impairment that substantially limits one or more major life activities.  *Rooney*, 410 F.3d at 382.  If the condition that is the subject of the employer's belief is not substantially limiting, and

---

*Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994); *see also Labojewski v. Gonzales*, 407 F.3d 814, 819 (7th Cir. 2005).  In this case, application of the regulations in question would have a retroactive effect, because they change the definition of, *inter alia*, "substantially limits" in a way designed not to require the level of limitation and the intensity of focus applied by the Supreme Court in *Toyota Motor Mfg., Ky, Inc. v. Williams*, 534 U.S. 184 (2002).  *See* 76 Fed. Reg. 16978-01.  Accordingly, the regulations will not be retroactively applied, and all citations to the regulations refer to the pre-2011 Code of Federal Regulations edition.

the employer does not believe that it is, then there is no violation of the ADA under the "regarded as" prong of the statute.  *Id.*

Not all impairments or conditions qualify as a disability within the meaning of the ADA.  *Rooney*, 410 F.3d at 381.  To be disabled, "an individual must be so limited in one or more major life activities that she is impaired in her ability to 'perform the variety of tasks central to most people's lives.'"  *Id.* (quoting *Toyota Motor Mfg., Ky. V. Williams*, 534 U.S. 184, 201 (2002)).  A person is "substantially limited" in a major life activity when he is "[s]ignificantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(j)(1)(ii); *see also Turner v. The Saloon, Ltd.*, 595 F.3d 679, 689 (7th Cir. 2010).

"Although this court has indicated that sleeping is a major life activity, *Scheerer v. Potter*, 443 F.3d 916, 919-20 (7th Cir. 2006), we have required evidence that the limitations on sleeping claimed by the plaintiff are sufficiently 'prolonged, severe and long-term' to warrant classification as disability, *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 757 (7th Cir. 2006)."  *Squibb v. Memorial Medical Center*, 497 F.3d 775, 784 (7th Cir. 2007).  Courts consider "the extent to which a claimed lack of sleep contributes to a decreased functional level in determining whether the severity of the sleep deprivation at issue rose to the level of a disability."  *Id.*  An inability to sleep for more than three to four hours a night is insufficient to establish

a substantial limitation in the major life activity of sleeping. *Id.; Burks*, 464 F.3d at 757; *see also Rossbach v. City of Miami*, 371 F.3d 1352, 1359 (11th Cir. 2004)(holding that plaintiffs who claimed that they could not sleep normally and could not get "a solid night's sleep" were not substantially limited from sleeping); *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 644 (2nd Cir. 1998)(holding that a plaintiff, who stated that he "usually get[s] a tough night's sleep," was not substantially limited in the activity of sleeping, because "[d]ifficulty sleeping is extremely widespread" and because the plaintiff had made no showing that his difficulties were any worse than difficulties suffered by a large number of adults).

The record makes it abundantly clear that Tate is not so limited in one or more of his major life activities that he is impaired in his ability to perform tasks central to most people's lives, and there is no evidence suggesting otherwise.  The record demonstrates that Tate is able to walk, see, hear, speak, care for himself and perform manual tasks as a rehabilitation counselor for DRS.  Tate never cited sleep apnea or any other medical condition in a medical information card he filled out after Ancell became his supervisor in 2005.  Moreover, Tate admitted that he only told his previous supervisor, Beverly Hartnett Young, in 2001 that he had sleep apnea.  In 2001, Tate admitted that he went to bed at 2:00 a.m. and awoke at 6:00 a.m. and did not "indicate the presence of excessive daytime sleepiness, fatigue or auxiliary symptoms of narcolepsy." (Doc. 89-4; Exhibit F, p. 15 ).  Even so, he did not request an accommodation from Young or anyone else at that time.  Young testified that she considered Tate's sleep apnea to be a minor problem.  The record reflects that he did

not tell Ancell or Standerfer that he had sleep apnea, and other than asking for an accommodation (after the fact) in his rebuttal charges, he never formally requested an accommodation from DRS prior to September 11, 2007.  There is nothing to suggest DRS regarded Tate as having such impairment.  Further, there is nothing to suggest that Tate believed his sleep apnea was severe enough for him to mitigate the effects of his sleep apnea as he did not lose weight or use a CPAP as recommended by his doctor.[4]

It is clear from the record before the Court that Tate cannot show that he considered his sleep apnea was severe enough to limit a major life activity and that he cannot show that he is disabled pursuant to the ADA.  Further, the record reflects that Tate was disciplined, not for having sleep apnea, but because he slept on the job during training sessions in violation of DRS rules. The record does not reveal that Tate continually fell asleep in the middle of conversations, while driving or when meeting with clients.  Rather, the record reveals that he fell asleep during mandatory training sessions and that is why he was disciplined.  Further, Tate cannot show that another similarly situated employee received more favorable treatment.  In fact, the record reveals that ten other DHS employees were suspended for 15 days for sleeping on the job and that two others were terminated after the second incident of sleeping on the job. Tate's ADA claim does not survive summary judgment.  As such, the Court grants the motion for summary judgment on Tate's ADA claim against DRS.

---

[4]Tate testified that he did not use the CPAP because of his facial hair.

**National Origin Claims and Retaliation Claims**

Prior to addressing the legal standards and merits of the national origin and retaliation claims, the Court notes that Tate's EEOC charge was filed on July 31, 2007.  A charge of discrimination must be filed with the EEOC within 300 days of the alleged unlawful employment practices.   *See Roney v. Illinois Dept. of Transportation*, 474 F.3d 455, 460 (7th Cir. 2007).  Discrete acts of discrimination which occur outside of the statutory time period are precluded. *See Turner v. The Saloon*, 595 F.3d 679, 684 (7th Cir. 2010).  Thus, none of the actions alleged to have taken place prior to October 4, 2006 are actionable under Title VII.  Therefore, any Title VII claims that occurred prior to October 4, 2006 in Counts II and III against DRS are time barred.

The Court also notes that any claims pursuant to 42 U.S.C. § 1983 that arose before March 13, 2006 are time barred as the complaint was filed on March 13, 2008.   Section 1983 claims have a two-year statute of limitations.  *Anton v. Lephamer*, 787 F.2d 1141 (7th Cir. 1986).  Thus, Tate's 1983 claims contained in Count VIII against Farmer are time barred.  Farmer retired in December 2004.  Tate has presented no evidence that Farmer engaged in any alleged discriminatory conduct after he retired in December 2004.  Also, any § 1983 claims contained in Counts IV, V, VI, VII, IX and X that occurred before March 13, 2006 are also time barred by the two year statute of limitations.   The Court now turns to address the claims.

Title VII of the Civil Rights Act of 1964 prohibits employers, *see* 42 U.S.C. §

2000e(b), from discriminating against their employees based on race, *see* 42 U.S.C. § § 2000e-2(a)(1). Title VII also prohibits retaliation or discrimination against an employee "because he has opposed any practice made an unlawful practice by this subchapter. ..." 42 U.S.C. § 2000e-3(a). Section 1981 prohibits racial discrimination and retaliation against employees when a contractual relationship exists between the employer and the employee. *See Davis v. Time Warner Cable of Southeastern Wisconsin, L.P.*, — F.3d —, 2011 WL 2611303, * 5 (7th Cir. 2011); *Thompson v. Mem. Hosp. of Carbondale*, 625 F.3d 394, 403-03 (7th Cir. 2010); *Hobbs v. City of Chi.*, 573 F.3d 454, 460 (7th Cir. 2009). "Though the statutes differ in the types of discrimination they proscribe, 'the methods of proof and elements of the case are essentially identical.'" *Id.*; (citing *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009)); *Benders v. Bellows & Bellows*, 515 F.3d 757, 769 n.7 (7th Cir. 2008)("The same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection claims.").

In Title VII disparate treatment cases and in retaliation cases, a plaintiff may show discrimination under either the "direct" or the "indirect" method of proof. *Brown v. Illinois Department of Natural Resources*, 499 F.3d 675, 681 (7th Cir. 2007); *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640 (7th Cir. 2002). The direct method of proof involves admissions by the employer, near-admissions by the employer, and more attenuated circumstantial evidence that "suggests discrimination through a longer chain of inferences." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641 (7th Cir. 2008); *Hemsworth v. Quotesmith.Com,*

*Inc.,* 476 F.3d 487, 490 (7th Cir. 2007). By contrast, the indirect method of proof involves a "certain subset of circumstantial evidence that includes how the employer treats similarly situated employees and conforms to the prescription of *McDonnell Douglas Corp. v. Green." Faas,* 532 F.3d at 641.[5]

The United States Court of Appeals for the Seventh Circuit has been critical of this nomenclature, because the phrase "direct method" erroneously implies that an employee must proceed with direct evidence. *See Faas,* 532 F.3d at 641, and *Luks v. Baxter Healthcare Corp.,* 467 F.3d 1049, 1052 (7th Cir. 2006) (the distinction between the two avenues of proof is "vague," and the terms "direct" and "indirect" are themselves "somewhat misleading...."). The Seventh Circuit has explained:

> "Direct" proof of discrimination is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion ( *e.g.,* "You're too old to work here."), but also *includes circumstantial evidence* which suggests discrimination through a longer chain of inferences."... The focus of the direct method of proof thus is not whether the evidence offered is "direct" or "circumstantial" but rather whether the evidence "points directly" to a discriminatory reason for the employer's action.

*Atanus,* 502 F.3d at 671-72, *citing Luks,* 467 at 1052, and *quoting Sylvester v. SOS Children's Villages Illinois, Inc.,* 453 F.3d 900, 902-03 (7th Cir. 2006). "Direct evidence is evidence which, if believed by the trier of fact, will prove a particular fact

---

[5]"The rubric of the indirect method was first set forth in *McDonnell Douglas Corp. v. Green....* Under this methodology, [the plaintiff] may create a presumption of discrimination by establishing a prima facie case of discrimination." *Atanus v. Perry,* 520 F.3d 662, 672 (7th Cir. 2008)( citing *Bahl v. Royal Indemnity Co.,* 115 F.3d 1283, 1290 (7th Cir. 1997)).

in question without reliance upon inference or presumption." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009)(quoting *Rudin v. Linclon Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005)).

Under *McDonnell Douglas,* a plaintiff must first make out a prima facie case of race discrimination. Tate may do so by showing: (1) he is a member of the protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) a similarly situated co-worked who is not a member of the protected class was treated more favorably. *Luster v. IDOC*, — F.3d —, 2011 WL 2857262, *2 (7th Cir. 2011)(citing *Winsley v. Cook County,* 563 F.3d 598, 604 (7th Cir. 2009)); *Ballance v. City of Springfield,* 424 F.3d 614, 617 (7th Cir. 2005)). If Tate succeeds, then defendants may rebut the prima facie showing by proffering a legitimate, nondiscriminatory reason for the adverse employment action. *Atanus*, 520 F.3d at 672. If the defendants bear this burden of production, then the plaintiff must prove that the defendant's proffered reason is "'false and only a pretext for discrimination.'" *Id*. (quoting *Bahl*, 115 F.3d at 1290. "The main inquiry in determining pretext is whether the reason for the [adverse employment action] was a correct business judgment." *Id*. at 674 (internal quotation marks omitted). If the plaintiff fails to rebut the "noninvidious reason for the adverse action, [then the defendant] is entitled to summary judgment. Otherwise there must be a trial." *Stone,* 281 F.3d at 644; accord *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006) ("If [the employer's proffered reason] is the true ground and not a pretext, the case is over.").

Here, the record reveals that Tate does not have direct evidence of race/national origin discrimination. He testified that Ancell and Standerfer (who were involved in the discipline) never made any derogatory comments about him being Hispanic. Also, he admits that he did not bring a claim against Farmer for discrimination based on race/national origin. Further, Evans and Humphrey were unaware that Tate is Hispanic and Tate did not produce evidence of racial comments made by Evans and Humphrey or any other circumstantial evidence on which to base his race discrimination claim. Tate also admits that he has no knowledge of any conversations between or among any of the defendants regarding discriminating against and/or harassing him or that Ancell, Standerfer and Davis ever conspired against him. Thus, Tate must rely on the indirect method of proof.

The parties do not dispute that Tate, as Hispanic, is in a protected class. Further, the parties do not dispute that the following constitute adverse employment actions: an oral reprimand in 2006 for calling instead of writing a client; the five-day then reduced to two-day suspension in December of 2006 based on allegations of failing to provide a Summary of Evidence to a hearing officer; the fifteen-day suspension for sleeping in during a training session in 2007; and a five-day suspension in August 2007 for failing to mail a Summary of Evidence packet to a hearing officer. However, the parties dispute whether he was meeting his employer's expectations and whether other similarly situated co-workers were treated the same.

The record contains ample evidence indicating that Tate was not meeting DRS' legitimate performance expectations and that it was Tate's own conduct that resulted

in his discipline.   Tate on numerous occasions failed to meet his expectations by completing inaccurate customer assessments, by failing to properly score the client assessments and by failing to accurately record interactions with clients in the file. He also used in appropriate terminology when interacting with staff, failing to follow his supervisor's instructions and inappropriately denied benefits to a customer over the phone for services over which he had no authority.   Moreover, Tate's rule violations were investigated and he was provided the chance to rebut the allegations against him.   Tate cannot establish that the decisions to discipline him, which ultimately were made by the DRS's Bureau of Labor Relations, and neither the Addus defendants nor the DRS defendants, were in any way based upon his race.   Clearly, Tate cannot establish that he was meeting his employer's legitimate business expectations.   Next, the Court addresses the similarly situated element.

To assess whether two employees are similarly situated, "a court must look at all relevant factors, the number of which depends on the context of the case." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000).   "The similarly situated inquiry is a flexible, common-sense one that asks, at bottom, whether 'there are enough common factors ... to allow for a meaningful comparison in order to divine whether intentional discrimination was at play.' " *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2008) (quoting *Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 560 (7th Cir. 2007)).   Nevertheless, substantial similarity is all that is required, rather than complete identity.   *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 831 (7th Cir. 2007) (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir.), cert.

granted, 128 S.Ct. 30, 168 L.Ed.2d 807 (2007)).

Relevant factors include whether the employee and proffered comparable "'dealt with the same supervisor'" and were "'subject to the same standards.'" *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)(quoting *Randue*, 219 F.3d at 617-18); *see also Lim v. Tr. of Ind. Univ.*, 297 F.3d 575, 581 (7th Cir.2002) (holding male professors granted tenure before implementation of higher publishing standards several years before female professor was a tenure candidate were not similarly situated to female professor); *Snipes v. Ill. Dep't of Corr.,* 291 F.2d 460, 463 (7th Cir. 2002) (holding district court did not abuse its discretion in concluding that plaintiff was not similarly situated to co-employees who had different supervisors than plaintiff).  Commonality of supervisors is important because "[d]ifferent employment decisions, concerning different employees, made by different supervisors ... sufficiently account for any disparity in treatment, thereby preventing an inference of discrimination." *Snipes,* 291 F.3d at 463 (quotation omitted); *see also Radue,* 219 F.3d at 618 (explaining when "different decision-makers are involved, two decisions are rarely similarly situated in all respects"). Another relevant factor is whether the employee and proffered comparable held the same or equivalent positions at the time of the challenged employment decision.  *See, e.g., Patterson,* 281 F.3d at 680 (holding plaintiff failed to show coworker was similarly situated where coworker "held an entirely different position in another division of the company"); *Hoffman Dombrowski v. Arlington Int'l Racecourse, Inc.,* 254 F.3d 644, 651 (7th Cir. 2001) (deciding comparator was not similarly situated

to plaintiff because they did not hold the same or equivalent positions at the time of the challenged employment decision); *cf. Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 743-44 (7th Cir. 1999) (comparing plaintiff to only other employee in same level managerial position as plaintiff).

As to the similarly situated element, Tate sets forth a slew of individuals that he claims are similarly situated as him.  However, a closer view of the record reveals that these people are not similarly situated and did not have the same job title/responsibilities as him.  Tate admits that he does not know any other non-Hispanic individuals who failed to send the Summary of Evidence Packets and does not know whether Tony Jones, whom he claims is similarly situated, or any other non-Hispanic individuals who failed to send the Summary of Evidence Packets or what, if any, discipline those individuals received.  He claims that Jones loaded hundreds of songs onto the hard drive of his workplace computer for personal use and that caused the server to crash.  Tate contends that Jones was not disciplined by Ancell.  However, Tate admitts that at the time of the computer crash Ancell was not Jones' immediate supervisor.  Further, Jones did not have the same job as Tate.  Jones was a H.P. counselor in Carbondale.  He also contends that Steve Bracewell, a VR Counselor in Carbondale, is similarly situated as him and that he fell asleep 4 or 5 times and was not suspended.  However, Tate does not know what investigation was done in regards to Bracewell's situation.  Though Bracewell had been accused of sleeping on the job, unlike Tate, the reports of Bracewell sleeping were mixed and the charges could not be substantiated.  Tate then attempts to compare to Mr.

Farmer.   However, Farmer is not comparable to Tate as Farmer was Tate's supervisor.  Next, he claims that he is comparable to defendant Humphrey in that she was treated differently than him despite her involvement in one of the Summary of Evidence packet's incidents that he received discipline.  Again, Humphrey and Tate do not have the same job title.  Humphrey is a LPN and a contract employee through Addus.  Further, Tate has not established that Humphrey did the same things as Tate that caused him to be disciplined.  Tate next applies the same reasoning to assert that Kohler is comparable as she was not disciplined for her part in the May 2007 incident that caused Tate to be disciplined.   However, again Tate has not demonstrated how their jobs are the same (Kohler was a LPN and a contract employee) or that Kohler did the same things as Tate did that caused him to be disciplined.  Tate has not established the similarly situated element.

Further, there is no evidence that Addus, Evans and Humphrey took any adverse actions against Tate.  The Addus defendants did not terminate him, suspend him or discipline him.  Nor did the Addus defendants reduce his compensation or employment benefits or alter his job responsibilities.  Summary judgment is proper for the Addus defendants on Tate's § 1981 and § 1983 race claims.  *See Alexander v. Wis. Dep't of Health & Family Servs.*, 263 F.3d 673, 676-77 (7th Cir. 2001)(dismissing two defendants where plaintiff failed to show that defendants were involved in the decisions to suspend the plaintiff or terminate his employment).

Likewise is the same as to defendant Davis.  Tate admits that he never met Davis.  He also admits that he never notified Davis of the alleged harassment.  The

record is clear that there is no evidence that Davis took part in any of the actions Tate alleges were discriminatory.  Thus, summary judgment is proper for Davis on Tate's § 1981 and § 1983 race claims.  Accordingly, the Court finds that summary judgment is proper on Tate's race discrimination claims.  The Court turns now to address the retaliation claims.

A plaintiff succeeds in establishing unlawful retaliation under a direct method of proof by presenting evidence of (1) a statutorily protected activity, (2) an adverse action, and (3) a causal connection between the two.  *Id.*  To succeed under the indirect method of proof, a plaintiff must demonstrate that he (1) engaged in protected activity, (2) was performing his job satisfactorily, and (3) was singled out for an adverse employment action (4) that similarly situated employees who did not engage in protected activity did not suffer.  *Miller v. Illinois Dept. of Transp.*, 643 F.3d 190, 200 (7th Cir. 2011); *Squibb*, 497 F.3d at 788.  Mere temporal proximity between protected conduct and an alleged retaliatory act will rarely be sufficient in and of itself to create a triable issue.  *See Miller*, 643 F.3d at 201.

As to his retaliation claim, Tate contends that defendants conspired with each other in order to retaliate against him because he "had opposed Farmer's alleged acts of sexual harassment...."  Doc. 63, ¶ ¶ 97-98; 107, 112, 160 and 161.  However, the record reflects that when asked about the alleged conspiracy, Tate repeatedly testified that he had no personal knowledge of when, where or how the conspiracy was formed, or whether he knew if the defendants had ever communicated at all regarding a plan to punish plaintiff.  Further, Tate admits that he never notified

defendants Ancell or Davis about the alleged harassment of his co-workers. Moreover, he cannot show a causal connection between any of the actions he alleges were taken against him and his "support" for his co-workers in 2003-2004. He has not shown and cannot show a nexus between his support of the women in 2003-2004 and any discipline that occurred in 2006-2007. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (citing favorably *Hughes v. Derwinski,* 967 F.2d 1168, 1174 (7th Cir.1992), which rejected an inference of retaliation where the events were four months apart).

Further, his claim for retaliation under § 1981 fails as plaintiff does not claim he was discriminated against on a account of his race. 42 U.S.C. § 1981 is limited in scope to discrimination on the grounds of race in the "mak[ing] and enforc[ing] [of] contracts. 42 U.S.C. § 1981(a); *see also Thanongnsinh v. Bd. of Educ.*, 462 F.3d 762, 782-783. Plaintiff's claims that defendants retaliated against him because he supported co-workers who were sexually harassed in violation of § 1981are not related to his race and, therefore, fail as a matter of law. Similarly, his claims for retaliation under the § 1983 fail as a matter of law for the same reason. "[T]he right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause." *Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2004). This includes Tate's claims that he was treated differently because he engaged in protected activity. *Id.* Therefore, to the extent plaintiff alleges that he was discriminated against or retaliated against because he supported his co-workers in their sexual-harassment claims, those claims fail. Defendants are entitled to

summary judgment on those claims as well.

**Hostile Work Environment Claims**

In Counts III, IV, V, VI, VII, VIII IX and X, Tate also brings claims under either Title VII or § § 1981 and 1983 for hostile work environment.  In seeking to establish the existence of a hostile work environment, plaintiffs must show that their work environment was both objectively and subjectively offensive—that is, "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).   In determining whether an environment is sufficiently hostile to support a claim, the Supreme Court has instructed us to cast a wide net and consider the totality of the circumstances.  The circumstances include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher,* 524 U.S. at 787–88 (quotation marks omitted).  To qualify as a hostile work environment, the conduct at issue must be severe or pervasive enough to cause psychological injury, although Title VII "comes into play before the harassing conduct leads to a nervous breakdown." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In addition to showing that the environment was sufficiently serious, the plaintiff must show that the harassment was based on membership in a protected class, *Cerros v. Steel Techs., Inc.,*288 F.3d 1040, 1045 (7th Cir. 2002), and also that there is a basis for imputing liability to the plaintiff's employer.

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764–65, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

Here, Tate is not a woman and has not alleged that he was the subject of sexual harassment. Nor has Tate proven that the alleged sexual harassment of Mrs. Green continued after Farmer's retirement of 2004. Thus, his hostile work environment claim must be based on national origin. As stated previously, Tate has no direct evidence, nor does the record establish that any of the alleged actions (i.e. his support staff was fired, false reports were made against him, and that he was spied on) were taken against him because he is Hispanic. Tate admits that he has no proof of any conspiracy between DRS and Addus. Further, he has no proof that the anyone took any actions against him based on race. Nor can he establish that non-Hispanics were treated better than he under similar circumstances. None of the actions that Tate complains created the hostile work environment were for the purpose of discriminating against him because he is Hispanic. Thus, the Court grants summary judgment on his hostile work environment claims as well.

## V. <u>Conclusion</u>

Accordingly, the Court **GRANTS** defendants' motions for summary judgment (Docs. 86, 87 & 90). The Court **DIRECTS** the Clerk of the Court to enter judgment in favor of Jo Gulley Ancell, Jeff Standerfer, Al Farmer, Eugene Davis, Lorie Humphrey, Kim Evans, Addus Home Health Care, and Department of Human Services, Division of Rehabilitation Services and against Edgar Tate on all counts of

Tate's Second Amended Complaint.

**IT IS SO ORDERED.**

Signed this 1st day of September, 2011.

David R. Herndon
2011.09.01
15:09:00 -05'00'

**Chief Judge**
**United States District Court**