IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EDGAR TATE,

Plaintiff,

v.

JO GULLEY ANCELL,
et al.,

Defendants.                                                              No. 08-0200-DRH

MEMORANDUM and ORDER

HERNDON, Chief Judge:

## I. Introduction

Pending before the Court is the Addus defendants' motion and amended petition for attorney's fees and costs (Docs. 135 & 147). According to the fee petitions, the Addus defendants move the Court to award them fees totaling $92,226.17. Having considered the petitions, submissions and applicable law, the Court grants the requested fees and costs.[1]

The Addus defendants seek $79,838.00 in attorneys' fees; $5,213.00 in paraprofessional fees; and $7,175.17 in expenses. In response, plaintiff still disagrees with the Court's conclusion that the Addus defendants are entitled to fees;

---

[1] On February 13, 2012, the Court determined that the Addus defendants were prevailing parties entitled to fees and costs (Doc. 130). Thereafter, the Addus defendants filed the petition for attorney's fees and costs. After reviewing the petition, the Court determined that additional information was needed. The Addus defendants supplied such information in the amended petition for attorney's fees and costs. Thus, the Court only needs to calculate the reasonable amount of fees and costs to award the Addus defendants.

maintains that the out of the three groups of defendants, the Addus defendants clearly played a lesser role in the conspiracy and argues that it is unconscionable for the Addus defendants to have incurred nearly $100,000 worth of legal bills to prove to the Court that his claims were "*facially* frivolous." The Court notes that plaintiff did not object specifically to the reasonableness of the billing hours or to the reasonableness of the rates submitted by the Addus defendants. Plaintiff generally objects to the total amount as excessive and punitive in nature. Plaintiff asks the Court to award the Addus defendants no more than $25,000 in legal fees.

## II. Attorney's Fees

When a prevailing party is entitled to "a reasonable attorney's fee," *see, e.g.*, 42 U.S.C. § 1988;, the district court must make that assessment, at least initially, based on a calculation of the "lodestar"—the hours reasonably expended multiplied by the reasonable hourly rate—and nothing else. *See Pickett v. Sheridan Health Care,* 664 F.3d 632, 640–43 (7th Cir. 2011). In limited circumstances, once calculated, the lodestar amount may be adjusted. *See Perdue v. Kenny A. ex rel. Winn,* ––– U.S. –––, 130 S.Ct. 1662, 1673–74, 176 L.Ed.2d 494 (2010); *Hensley v. Eckerhart,* 461 U.S 424, 430, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Robinson v. City of Harvey,* 489 F.3d 864, 871–72 (7th Cir. 2007).

In setting a reasonable billing rate, courts are directed to consider the attorney's regular rates as well as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

Evidence of reasonableness of a proposed hourly rate must include an affidavit or declaration of the attorney performing the work and information about rates actually billed and paid in similar lawsuits. *Id.* at 896, 104 S.Ct. 1541. Appropriate rates can be determined through direct or opinion evidence about what local attorneys charge under similar circumstances. *Id.* at 896 n. 11, 104 S.Ct. 1541.

Once the lodestar figure is determined, the court may adjust the figure upward or downward as necessary to make the award of attorney's fees reasonable, while ensuring the fee award does not provide a windfall to the movant. *See Hensley*, 461 U.S. at 429, 103 S.Ct. 1933. Although courts have "broad discretion in setting the appropriate award of attorney's fees," there is a strong presumption that the lodestar amount is reasonable and should be modified only in exceptional cases. *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

In order to determine a reasonable hourly rate, courts should look at the "the market rate for the services rendered." *Pickett*, 664 F.3d at 640. The market rate is the "rate that lawyers of similar ability and experience in their community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999). The attorney's billing rate for comparable work is "presumptively appropriate" to use as the market rate. *Pickett*, 664 F.3d at 640; *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003). "The best evidence of the value of the lawyer's services is what the client agreed to pay him." *Assess. Tech. of WI, LLC v. WIREdata, Inc.,* 361 F.3d 434, 438 (7th Cir. 2004). Thus, the attorney's actual billing rate paid by his client is "presumptively

appropriate" to use as the market rate. *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1311 (7th Cir. 1996). The "next best evidence" of a reasonable market rate is "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Id.* (quoting *Spegon,* 175 F.3d at 555). The party seeking fees bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Id.* (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n. 11 (1984)). Once the fee applicant satisfies this burden, the other party must provide "a good reason why a lower rate is essential." *Id.* (quoting *People Who Care,* 90 F.3d at 1313).

In its fee petitions, the Addus defendants list seven attorneys, one paralegal and a law librarian who worked on this case. The attorneys listed have many years of experience. The lead partner on the case has 25 years of experience and the primary attorney on the case has seven to eight years of experience in employment litigation. The hourly billing rates for the attorneys range from $210.00 to $444.26 an hour. The attorneys' fees total $79,838.00. The paralegal's rate is $185.17 an hour and the law librarian's rate is $84.44 an hour and their fees total is $5,213. The Addus defendants also seek $7,175.17 in expenses: electronic legal research - $5,439.12; travel and meals - $1,682.50; and mailing and filings $53.55.

Based on the documentation submitted, the Addus defendants have established to this Court's satisfaction that the hourly rates submitted by its legal team are the actual billing rates and are reasonable for this type of employment

discrimination case. These rates were fully paid by the Addus defendants with no guarantee of repayment and are thus presumptively appropriate to use as the market rate. As noted previously, plaintiff does not challenge the hourly rates of any of the Addus defendants' attorneys. Given the experience and expertise of the Addus defendants' lawyers the Court finds the rates for the attorneys, the paralegal and the law librarian to be entirely reasonably. Accordingly, the Court will award the Addus defendants its fees at these rates and moves on to the remaining issue of whether the time expended was reasonable.

Plaintiff made general arguments about the fees and only a couple of specific objections to the hours expended. By virtue of its familiarity with the litigation, the Court is in the best position to determine the number of hours reasonably expended in the litigation. *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 409 (7th Cir. 1999); *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 519 (7th Cir. 1993). The Court should exclude from the fee petition time spent that was "excessive, redundant, or otherwise unnecessary." *Stark v. PPM Am., Inc.,* 354 F.3d 666, 674 (7th Cir. 2004).

As to plaintiff's specific objections, the Court finds them without merit. First, plaintiff objects to 6 hours (5.9 hours by the Court's calculation) of professional services to investigate plaintiff's counsel and the judge as these are not part of the legal requirements of the case.[2] The Court disagrees. All lawyers worth their salt do research to see how the Court has ruled on cases of similar ilk. As for the research

---

[2] A review of the entries indicates that the Addus defendants' counsel also investigated plaintiff which counsel failed to mention.

on the plaintiff's lawyer, it makes sense to the Court that defendants would need to research the oppositions as well. If plaintiff's lawyer did not do that on behalf of his client, then he did not provide a full service to his client. Thus, the Court finds these to be appropriate billable hours.

Likewise, the Court rejects plaintiff's objections to the sum of $25,435 billed to the client to prepare the motion to dismiss and the $4,053 legal research billed to the client to prepare the motion to dismiss. Based on the reasons stated below and the following, the Court finds these hours and the legal research appropriate. The Court cannot second guess how much time defendants should have spent on the motion to dismiss. Unfortunately, plaintiff pursued a very convoluted theory and it made the case very complicated. It is clear plaintiff's counsel did not fully understand the facts and the law well, or he did and he just attempted to twist a cause of action out of something that was not there in order to provoke a settlement. In any event, the pleadings dictate the course of action either side has to take and the plaintiff is primarily responsible for the huge amount of time spent by the defense in trying to defend the this case.

As to plaintiff's objection to the 1.2 hours for an entry of appearance, the Court finds this to be reasonable. Perhaps an hour and two tenths is a long time to prepare an entry of appearance. However, the Court finds that it may take that long to prepare and file the entry considering that the associate or assistant must get the out the file or bring it up on the computer, check the local rules, check the chamber procedures, check the Federal Rules of Civil Procedure and dictate or type the entry

and check the CM/ECF procedures all before preparing and filing the entry. Thus, the Court rejects this objection.

Lastly, plaintiff objects to the billing of 1 hour to confer with plaintiff's counsel about staying discovery pending ruling on the motion to dismiss. Plaintiff contends that this conversation took 5 to 10 minutes. Unfortunately plaintiff's counsel does not identify the date because the Court does not know if the billing was accompanied by another conversation in house. Thus, the Court finds that this billing is reasonable.

Further, plaintiff argues strongly that the Court should have dismissed the case at the dismissal stage if the Court thought that the case was frivolous at that time. This logic is severely flawed. As to when the case became frivolous, the Court finds as follows.

The allegations contained in the original complaint against the Addus defendant are summarized as follows:

> Addus is a private corporation based in Marion, Illinois that provides private support staff, by contract, to the DRS offices in Carbondale and Anna. Kim Evans was the branch manager at the Addus Marion office. Lorie Humphrey is employed by Addus as a contract worker in the DRS Anna office. Contract workers hired by Evans were requested by Ancell or Evans to inform on Tate and look for opportunities to charge him with misconduct. Ancell assigned Humphrey to work closely with Tate in reassessing HSP customers and that Ancell and Humphrey conspired to make false charges against Tate so that he would be subject to discipline. Ancell hired contract workers from Addus in violation of the DRS rules against nepotism in that Ancell hired Evan's sister, Sandy Kohler and her daughter Kasey Evans. In January 2007, Tate wrote a letter to the Executive Office of the Inspector General claiming that the hiring of Evan's relatives was unlawful. Defendants' actions (discipline, suspension and harassment) against him were because he had sleep

> apnea, his is Hispanic and he spoke out about the sexual harassment and the nepotism.

Pursuant to clearly established case law and the Federal Rules of Civil Procedure, the Court, in deciding a motion to dismiss for failure to state a claim, has to take the case as plead, assume the facts as stated by plaintiff in the complaint as true and draw all reasonable inferences in plaintiff's favor.  The Court did just that in ruling on the motion to dismiss.  This was plaintiff's complaint and his counsel alleged facts in the complaint which the Court took as true.  In deciding the motion to dismiss, the Court did parcel out some of plaintiff's claims that were not legally cognizable.  Some of the counts were dismissed as plaintiff's counsel should not have brought these claims against the Addus defendants or were dismissed as plaintiff's counsel conceded that he did not intend to bring these claims against the Addus defendants.[3] Plaintiff's original complaint was a huge ball of confusion in that plaintiff commingled various claims against the numerous defendants he sued.  This made the task of going through and determining which claims stated a valid claim for relief a daunting

---

[3]For example, as to the ADA and Title VII claims against the Addus defendants, plaintiff responded: "Plaintiff acknowledges that he has not stated and in fact, never intended to state a claim against the Addus Group for violations of Title VII or the ADA.  Such claims may be filed only against DRS as an institution.  Furthermore, plaintiff has determined, through additional research, that he does not have a legal basis at this time to make a claim for common law retaliation, under Illinois law, and here hereby requests the Court to withdraw that Count of his Complaint without prejudice." (Doc. 26. p. 6).  Further, as to the First Amendment claims regarding nepotism, plaintiff conceded this claim in his response: "The Plaintiff recognizes, as Addus has duly pointed out, that he partially mis-perceived the time sequence of events when he told the story in his Complaint.  In particular, given the timing of the filing of Tate's first *written* complaint against Addus about nepotism in hiring, it is unlikely that this was a substantial motive for the Addus Group in taking actions against Mr. Tate, since most of the acts against Mr. Tate occurred *before* Mr. Tate filed his formal, written complaint." (Doc. 26, p. 4).

task for the Court.[4]

Thereafter, at the summary judgment stage while combing through approximately 1000 plus pages of pleadings and exhibits, the Court found out that plaintiff's wild accusations could not hold water. After considering all the evidence contained in the record, the Court found out the plaintiff could not confirm the allegations that he alleged in his complaint. The Court found:

> (1) "[t]here is no evidence that Addus, Evans or Humphrey took any adverse actions against Tate. The Addus defendants did not terminate him, suspend him, or discipline him. Nor did the Addus defendants reduce his compensation or employment benefits or alter his job responsibilities;"
> (1) "[t]here is no evidence that Addus, Evans or Humphrey took any adverse actions against Tate. The Addus defendants did not terminate him, suspend him, or discipline him. Nor did the Addus defendants reduce his compensation or employment benefits or alter his job responsibilities;"
> (2) "[w]hen asked about the alleged conspiracy, Tate repeatedly testified that he had no personal knowledge of when, where or how the conspiracy was formed, or whether he knew if the defendants had ever communicated at all regarding a plan to punish plaintiff;"
> (3) Plaintiff's § 1981 § 1983 retaliation claims "fails as a matter of law," because he did not alleged that he was retaliated against on the basis of his race; and
> (4) Plaintiff "has no direct evidence, nor does the record establish that any of the alleged actions ... were taken against him because he is Hispanic. Tate admits that the has no proof of any conspiracy between DRS and Addus. Further, he has no proof ... anyone took any actions against him based on race."

(Doc. 26. ps. 22-26). Also at this time, the Court determined that the case plaintiff's

---

[4]In that lengthy Order, the Court directed plaintiff to designate and divide the remaining claims as to each separate defendant into separate counts. A review of the first amended complaint and the second amended complaint (Docs. 34 & 63), reveal that plaintiff's counsel did not comply with that directive.

counsel filed on behalf of his client as to the Addus defendants was made up of many misrepresentations and was absolutely frivolous from the beginning of the case. The case against the Addus defendants should have never been brought and had plaintiff's counsel done his homework before hand these claims would not have been brought. Thus, the Court finds that plaintiff should not have to shoulder this hefty bill based on his lawyer's malfeasance for filing and pursuing such a frivolous case against defendants who did not belong in this case.

District Courts possess the authority to require an attorney to pay their opponent's attorney's fees under certain circumstances. *See* 28 U.S.C. 1927. Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Liability under § 1927 is justified only in those limited situations when an attorney's conduct is marked by either subjective or objective bad faith. *Pacific Dunlop Holdings v. Barosh*, 22 F.3d 113, 120 (7th Cir. 1994). The Seventh Circuit has concluded that it is appropriate (1) in "instances of a serious and studied disregard for the orderly process of justice," *Ross v. City of Waukegan*, 5 F.3d 1084, 1089 n. 6 (7th Cir. 1993), (2) when an attorney pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound," *Kapco Mfg. Co., Inc. v. C & O Enters, Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989)(citation omitted) , and/or (3) "where a 'claim [is] without a plausible legal or factual basis and lacking

in justification.'" *Burda v. M Ecker Co.*, 2 F.3d 769, 777 (7th Cir. 1993)(citations omitted); *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985)(holding that "[i]f a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious."). The statute also imposes on an attorney a duty "to dismiss claims that are no longer viable." *Dahnke v. Teamsters Local 695,* 906 F.2d 1192, 1201 n. 6 (7th Cir. 1990). Clearly, attorney Fedder's conduct in this litigation as to the Addus defendants has been unreasonable and vexatious. Therefore, based on the circumstances of this litigation against the Addus defendants, the Court **ORDERS** that attorney Richad Fedder shall pay the attorneys' fees and costs pursuant to 28 U.S.C. 1927.

### III. Conclusion

Accordingly, the Court **GRANTS** the Addus defendants' motion and amended petition for attorney's fees and costs (Docs. 135 & 147). The Court **AWARDS** the Addus defendants $92,226.17 in attorneys' fees and costs. This award shall be paid by attorney Richard Fedder.

**IT IS SO ORDERED**.

Signed this 28th day of June, 2012.

Digitally signed by David R. Herndon
Date: 2012.06.28 09:21:29 -05'00'

**Chief Judge**
**United States District Court**